Allen L. Grammer and Malvina A. Grammer, Husband and Wife, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 16422. Promulgated January 26, 1949.

*Louis P. Eisner, Esq.*, for the petitioners.
*Stanley W. Herzfeld, Esq.*, for the respondent.

36

OPINION.

OPPER, *Judge*: Petitioner's effort to deduct a loss on the sale of property which he originally acquired as a residence can not succeed unless it was suffered in a "transaction entered into for profit." The original acquisition was clearly a personal one, unconnected with a profit purpose, and, unless there has been a subsequent "transaction" which was "profit-inspired," the loss would not be deductible. *Warren Leslie, Sr.*, 6 T. C. 488.

It is recognized by the parties that a mere listing with a broker for sale or rent, *Morgan* v. *Commissioner* (C. C. A., 5th Cir.), 76 Fed. (2d) 390; certiorari denied, 296 U. S. 601; *Rumsey* v. *Commissioner* (C. C. A., 2d Cir.), 82 Fed. (2d) 158; certiorari denied, 299 U. S. 552; *Phipps* v. *Helvering* (C. A. D. C.), 124 Fed. (2d) 292; or even for rent, *Schmidlapp* v. *Commissioner* (C. C. A., 2d Cir.), 96 Fed. (2d) 680, does not constitute such a "transaction" as satisfies the statutory requirement, or, in the words of the regulation,[1] that the property has not thereby been "otherwise appropriated to income-producing purposes."

The narrow question here is whether petitioner's "exclusive" listings with designated brokers for specified periods are sufficient to warrant our reaching the opposite conclusion. It would be dispositive of the entire question to follow the explicit language of the regulation effective for so long as to have virtual statutory sanction,

---

[1] Footnote 2, *infra*.

see *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110, that if property has not actually been rented, its appropriation to income-producing purposes must be accompanied by a "use" for such purposes up to the time of its sale.[2]

In addition, however, petitioner's reasoning would require an espousal of the ultimate view that his conduct had "put an end to the owner's possible use of it for a residence or his presently selling it." *Morgan* v. *Commissioner, supra*, or has rendered it "impossible for the owner to resume his original occupation," *Schmidlapp* v. *Commissioner, supra*, or "has likewise made it impossible to resume residential uses by a mere change of mind." *Rumsey* v. *Commissioner, supra*.

We need not here concern ourselves with all possible arrangements, short of an actual rental of the property, that might be made with real estate brokers, and their effect upon an appropriation to business use for purposes of a loss deduction. Parenthetically, however, it may be observed that the statutory prerequisite is a loss in a "transaction entered into for profit," and it may be difficult to demonstrate that, even if the employment of a broker is a "transaction," any loss could be attributable to it. But, in any event, it seems clear that what petitioner did in this situation could not be construed as an irrevocable position on his part to any extent.

All that he accomplished by his "exclusive" listing was to undertake that the property if rented would be rented through that broker or at least his commission would be paid. There was no agreement as to the rental to be sought and the possibility of the broker's producing a tenant ready and willing to trade on petitioner's terms was consequently absent. Cf. *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; *Sowney* v. *Bair* (S. Ct. Pa.), 112 Atl. 530. It follows that petitioner may have disabled himself from a rental of the property through another broker, or possibly on his own account, cf. *Slattery* v. *Cothran*, 210 Ap. Div. 581; 206 N. Y. S. 576, as he would thereby have demonstrated the terms upon which he was prepared to deal. Cf. *Jacobs* v. *McKelvey* (Pa. Super. Ct.), 197 Atl. 494. But neither his resumption of occupancy of the premises nor his sale of them would disable him from insisting on a higher rental than anything the broker could produce. And, since the contract specified no rental figure, the broker could not rely upon it to compel petitioner to accept a tenant. "In the absence of a special agreement making his commission contingent on something else, the right of a broker to a commission, where the deal which he is authorized to negotiate is not consummated, depends

---

[2] Regulations 111, section 29.23 (e)–1:

"* * * If, however, property so purchased or constructed is prior to its sale rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss from the sale of the property * * * is * * * an allowable deduction in an amount not to exceed the excess of the value of the property at the time it was appropriated to income-producing purposes * * *."

on his production of a customer who is able, ready, and willing to buy, sell or lease the property in question * * * as the case may be, on terms which have been prescribed by, or are satisfactory to the principal." 12 C. J. S. 187. "* * * where no price or terms are fixed, it is necessary to secure an offer which is acceptable to the employer." 12 C. J. S. 182, citing *Bennett* v. *Crew-Levick Co.*, 288 Pa. 180; 135 Atl. 735.

We say that the contracts contained no rental figure for three reasons: First, none is shown by the evidence, and the burden of proof was upon petitioner; second, oral testimony purported to set forth the entire agreement and no mention of any figure was included; finally, the preponderance of the evidence itself supports this inference. Petitioner subsequently employed the same broker to sell the property in language incorporated in a writing which is in evidence. It is characterized by petitioner similarly to the rental arrangement as "employing the latter [the broker] exclusively and irrevocably." Yet no sale price is mentioned, and the extent of petitioner's commitment in that agreement is "to pay to the said agents a commission of five per cent (5%) on the gross consideration upon the sale or exchange, by whomsoever the same may be made or effected * * *." We think the balance of probability is that a similar employment between the same parties was similar in effect and that petitioner's sole obligation under the listing for rent was likewise to pay a commission to the broker if the property were rented, no matter by whom.

The effect of what petitioner did accordingly fell short of constituting such a "transaction entered into for profit" as to place it out of his power at any time to resume occupancy of the premises or to sell them. Under the principle of the cases cited, this is not such an appropriation to income-producing purposes as entitles him to a deduction for the loss on the sale of the property.

The controversy as to the fair market value of the property at the time of its conversion to business use of course disappears upon our conclusion that the appropriation did not occur prior to sale. It may be added, however, that "A decline in value during a period while the owner is merely trying to enter into a profit-inspired transaction *with the property* is regarded as a part of the loss incidental to the personal use, without which the loss would not have occurred. *Frances G. Smith*, 23 B. T. A. 1134." *Warren Leslie, Sr., supra*, 493. (Emphasis added.) Petitioner's efforts to rent the property can not even be characterized as "the inception" of such a transaction, *Schmidlapp* v. *Commissioner, supra*, and the loss, if any, occurring while they were in process would hence be attributable to the prior personal use and not to the ultimate disposition.

Reviewed by the Court.

*Decision will be entered for the respondent.*