Paul F. and Agnes J. Stutz v. Commissioner.
Stutz v. Commissioner
Docket No. 3469-62.
United States Tax Court
T.C. Memo 1965-166; 1965 Tax Ct. Memo LEXIS 162; 24 T.C.M. (CCH) 888; T.C.M. (RIA) 65166; June 24, 1965
*162 In 1959 the petitioners abandoned the use of property as their residence and thereafter, until March 23, 1960, held such property with the intention of renting it. Despite continuous efforts, the property was never rented. On March 23, 1960, they ceased attempts to rent such property and thereafter held it for sale only. It was sold on July 1, 1960. Held, that the property had not been appropriated or converted to income-producing purposes and hence there was no transaction entered into for profit as required by section 165(c)(2) of the Internal Revenue Code of 1954 for the deduction of any loss sustained upon the sale of the property. Held, however, that from January 1 to March 23, 1960, the property was held by the petitioners for the production of income, namely rent, within the intendment of sections 212 and 167(a)(2) of the Code and that under section 62(5) the petitioners are entitled to deduct from gross income, in computing adjusted gross income, various amounts expended in attempting to rent the property and for maintenance thereof during such period, and a reasonable allowance for depreciation on the property during such period. The amounts deductible *163 determined. Paul F. Stutz, pro se, 2261 Westbrook Dr., Toledo, Ohio. Charles H. Powers, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in income tax for the taxable year 1960 in the amount of $661.57. The petitioners claim an overpayment of income tax in the amount of $520.72. The principal issue presented is whether the petitioners are entitled to a loss deduction, under section 165 of the Internal Revenue Code of 1954, upon the sale of property which had previously been used by them as their residence. Also involved is the question *166 whether the petitioners are entitled to deductions for depreciation and costs of repairing and maintaining the property. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. The petitioners are husband and wife, residents of Toledo, Ohio. They filed a joint income tax return for the taxable year 1960 with the district director of internal revenue, Cleveland, Ohio, reporting items of income and expense on the cash method of accounting. In April 1953 the petitioners purchased a house and lot located at 4217 Willis Boulevard, Toledo, Ohio (hereinafter sometimes referred to as "the property") which was used by them as a personal residence. The cost of the property was $11,500, and their mortgage payments were $70 monthly. From the time the petitioners purchased the property until 1958, when a storm sewer was installed and the blacktop road fronting the property was paved with concrete, water stood in the front yard and in the street during wet seasons. At the same time curbing was installed on both sides of the road which, after the improvements were made, was divided by a grass median strip. At the time of purchase the paint *167 around the kitchen door was blistered and peeling. This was repaired, but the blistering recurred periodically until air vents were installed between the framework and the insulation. The house was painted several times between 1953 and 1959 as part of its general maintenance. In 1956 the petitioners further improved the property by installing a new septic tank at a cost of $280. In 1953 the back yard was completely overgrown, but was cleared and subsequently maintained by the petitioners. In 1957 or 1958 a gas line was installed along Willis Boulevard. In 1955 or 1956 a parochial grade school and church were constructed within about two and one-half blocks of the petitioners' property. In 1958 property within 3 or 4 blocks of petitioners' property was purchased for the purpose of constructing a Catholic coeducational high school. In May 1959, Paul Stutz moved to Akron, Ohio, to accept a position there. Agnes Stutz remained in the Toledo residence until the end of August 1959, when she left to join her husband in Akron, where they took up residence in September 1959. Thereafter the property remained vacant so long as it was owned by them. In the summer of 1959, the petitioners *168 listed the Toledo residence for sale under an exclusive 90-day contract with a large realty company in Toledo. Such company showed the property to several prospective purchasers, one of whom offered to purchase it for $11,000. This offer was later reduced to $10,500, and was accepted by the petitioners. However, the sale was not consummated because the prospective purchaser decided to invest his money in a business which he was starting. No other offers were received and the listing expired in late August or early September of 1959. The petitioners discussed the question of what to do with the property and decided that, since they would not be in the city, they would not renew the listing and not continue trying to sell the property but instead would attempt to rent it. Beginning in September 1959, the property was, from time to time, advertised in a local newspaper for rent at $100 per month, later at $90 per month and finally, in 1960, at $80 per month. The advertisements were set forth under the listing "Houses for Rent - Unfurnished," and did not offer the property for sale. The petitioners in 1959 expended at least the amount of $6.18 for advertising the house for rent. Most *169 of the negotiations looking toward rental of the property were handled for the petitioners by Paul Stutz's mother, Gladys E. Stutz, and his brother, Robert Stutz, who lived with his mother in her home which was located about a mile from the petitioners' property. The advertisements listed the telephone number of Gladys E. Stutz. Robert and his mother received several inquiries concerning the renting of the property, and the premises were shown to several prospective tenants. On one occasion, Robert informed Paul of a prospect and Paul prepared a lease agreement, but the prospect subsequently decided to purchase a house instead. On another occasion, in March 1960, a couple telephoned and then came by to see the property. They agreed to rent the premises and left a $20 deposit with Gladys Stutz, who gave them the key. Subsequently, they stated that they no longer desired to rent the property, and Gladys Stutz refunded the $20 deposit. On March 23, 1960, the petitioners addressed a letter to a Toledo real estate salesman, accepting his offer of March 19, 1960, to attempt to obtain a purchaser for the property. The petitioners at that time decided to try to sell the property because *170 their resources were limited and they could not afford to hold the property for rent any longer. The salesman found a purchaser, Eva Lockard, and on June 11, 1960, she and the petitioners executed a contract for the purchase and sale of the property. On July 1, 1960, Eva Lockard and the petitioners executed a "Land Contract," which provided for the sale of the property for a consideration of $9,000, consisting of $1,000 in cash and the balance in monthly installments of $100 with interest at 6 1/2%. The petitioners paid a commission of $540 to Travis in connection with this sale. Eva Lockard paid the petitioners $100 on August 6, 1960. On September 3, 1960, she paid them $216.11, representing a $100 monthly payment plus $116.11 for real estate taxes. The contract provided that the balance due would immediately be paid in full in the event that Eva Lockard should be successful in disposing of a certain parcel of property. In fact, this was done and the balance due the petitioners was paid in 1960. In their return for 1960, the petitioners claimed as an ordinary loss deduction an amount of $2,907.50 resulting from the sale of their property, computed as follows: Basis of property
$11,500.00
Broker's commission
540.00
Real estate taxes
116.11
Miscellaneous expense
1.39
Total
$12,157.50
Less: Sales price
$9,000.00
Accumulated depreciation
250.00
9,250.00
Loss on sale
$ 2,907.50
*171 During the period January 1 to March 23, 1960, the petitioners in connection with attempts to rent the property expended a total of $106.56 for telephone calls, advertising, and travel. During the period January 1, 1960 through July 1, 1960, they also incurred various expenses in connection with maintaining the property. They expended $17.36 for electricity and $76.70 for heating oil, of which amounts one-half was attributable to the period before March 23. They also expended $26.30 for furnace service prior to March 23. An amount of $5 for yard upkeep was expended after March 23. In their return for 1960, the petitioners reported rental received in the amount of $200 (consisting of the two $100 payments received from Eva Lockard), depreciation on the property of $125, and repairs and other expenses totaling $221.49, resulting in a claimed net loss from rents in the amount of $146.49. They also claimed the standard deduction in the amount of $953.15, representing 10% of the reported adjusted gross income. In the notice of deficiency, the respondent disallowed as a deduction the claimed loss of $2,907.50 on the sale of the property, with the following explanation: It has *172 been determined that you have not established that you converted the residence to rental property or, if such a conversion was made, the value thereof on the date of the alleged conversion. Accordingly, the loss claimed is not allowable as a deduction under Section 165 of the Internal Revenue Code of 1954 and is specifically prohibited by the provisions of Section 262 of the Internal Revenue Code of 1954. In such notice, the respondent also disallowed as a deduction the claimed net loss from rents of $146.49, with the following explanation: It has been determined the gross rent reported was an integral part of the sales price of your personal residence. The expenses claimed are therefore a part of the cost of selling the residence and as personal expenses are not deductible due to the prohibition of deducting personal expenses by the provisions of Section 262 of the Internal Revenue Code of 1954. From January 1 to March 23, 1960, the property was held by the petitioners for the production of rents. Thereafter, until July 1, 1960, they held the property for sale, and not for the production of rents. Opinion
*173 We will first consider whether the petitioners are entitled to the claimed loss deduction of $2,907.50 upon the sale of the property at 4217 Willis Boulevard, Toledo, Ohio. It is the contention of the petitioners that they did sustain a loss upon the disposition of such property and that it is deductible under section 165(c)(2) of the Internal Revenue Code of 1954, [1] as a loss incurred in a transaction entered into for profit, though not connected with a trade or business. The property in question had been purchased in 1953 by the petitioners as their personal residence and it was actually used as a residence until the end of August 1959, when Agnes Stutz joined her husband *174 in Akron, Ohio. The property was listed with a realty company for sale in the summer of 1959 under an exclusive 90-day contract which expired in late August or early September 1959. The property was not sold during that time and the listing was not renewed. Rather, the petitioners decided to rent the property, instead of selling it, and unsuccessful attempts were made to rent the property over the period from September 1959 until March 23, 1960, when the petitioners abandoned attempts to rent the property and authorized a real estate salesman to attempt to sell the property. The property was sold on July 1, 1960. The petitioners contend that when, in September 1959, they made efforts to rent the property such property was converted to property held for income-producing purposes and that therefore any loss upon its subsequent sale constituted a loss in a transaction entered into for profit. The respondent, on the other hand, maintains that the petitioners did not rent or otherwise appropriate the property to income-producing purposes and that therefore any loss sustained upon the sale would not constitute a loss sustained in a transaction entered into for profit, but would constitute *175 a personal loss, the deduction of which is not permitted by section 165(c)(2) of the Code and the regulations thereunder. [2]
In Heiner v. Tindle, 276 U.S. 582, the Supreme Court held that a loss sustained upon the sale of property which had originally been the residence of the taxpayer, but which had been abandoned as such and had been rented for a number of years, constituted a loss in a transaction entered into for profit within the meaning of section *176 214(a)(5) of the Revenue Act of 1918, which corresponds to section 165(c)(2) of the Internal Revenue Code of 1954. The Court stated that section 214 was intended to permit deductions of capital losses wherever the capital investment was used to produce taxable income, and that the appropriation of the property to rental purposes was the transaction entered into for profit which resulted in the loss. Thereafter, in Morgan v. Commissioner, (C.A. 5) 76 F. 2d 390, certiorari denied 296 U.S. 601, and Rumsey v. Commissioner, (C.A. 2) 82 F. 2d 158, certiorari denied 296 U.S. 601, affirming Memorandum Opinions of this Court, it was held that where the taxpayers had ceased to use the property as their residence and had placed it in the hands of real estate agents for rent or sale, but the property had not been rented, there had not been a transaction and therefore no "transaction entered into for profit". The courts stressed the fact that since the property had not been rented the taxpayer was free to reoccupy the premises as a residence or to sell the same, and thus distinguished Heiner v. Tindle, supra. *177 We reached the same conclusion in Allen L. Grammer, 12 T.C. 34, where the taxpayer had merely listed the property for rent with a real estate broker, but the property had not been rented prior to the time of sale. In view of the foregoing, we must conclude that any loss sustained by the petitioners in the instant case upon the sale of their property would not constitute a loss in a transaction entered into for profit within the meaning of section 165(c)(2) of the Code. In view of this conclusion, it becomes unnecessary to consider the respondent's additional contention that the petitioners have not established the fair market value of the property at the time of its claimed conversion to income-producing purposes. The respondent also held that the petitioners are not entitled to deductions of various amounts paid by them in 1960 in attempting to rent the property and for maintenance of the property, or to a deduction for depreciation of the property. Section 212 of the Internal Revenue Code of 1954 provides that in the case of an individual there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during *178 the taxable year for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. Section 167(a)(2) of the Code provides that there shall be allowed as a deduction a reasonable allowance for the exhaustion, wear and tear of property held for the production of income. Section 63(b) of the Code provides that where an individual elects under section 144 to use the standard deduction (as was done by the petitioners herein) there shall be allowed as deductions from adjusted gross income in computing taxable income only the standard deduction and the deductions for personal exemptions. However, under section 62(5) of the Code an individual, in computing adjusted gross income, is permitted to deduct from gross income the amounts allowed as deductions by sections 212 and 167 "which are attributable to property held for the production of rents * * *". As we have heretofore pointed out in Mary Laughlin Robinson, 2 T.C. 305, and William C. Horrmann, 17 T.C. 903, the question of whether residence property has been converted to property held for the production of income for purposes of the application *179 of sections 23(a)(2) and 23(1)(2) of the 1939 Code (corresponding to sections 212 and 167(a)(2) of the 1954 Code) is an entirely different question from that of whether there has been such an appropriation or conversion of a residence to income-producing purposes as to constitute a transaction entered into for profit for purposes of the application of section 23(e)(2) of the 1939 Code (corresponding to section 165(c)(2) of the 1954 Code). [3] As pointed out hereinabove, the mere listing of the property for rental is not sufficient to constitute a transaction entered into for profit for purposes of section 165(c)(2). However, as we stated in William C. Horrmann, supra, in determining whether property is held for the production of income, within the meaning of the statute, the use made of the property and the owner's intent in respect to the future use or disposition of the property are generally controlling. In that case we held that where the taxpayer had abandoned the use of property as his residence and had made efforts to rent it, the property was held for the production of income, even though no income was in fact received from the property. See also Mary Laughlin Robinson, supra. *180 *181 It is the position of the respondent that the efforts made by the petitioners to rent the property, which had been their residence, were mere token efforts and were not sufficient to establish that during 1960 the property had been converted to property held for the production of income from rents. We are satisfied, however, from the evidence, including the testimony of the petitioner Agnes Stutz, that about September 1, 1959, the petitioners abandoned the use of the property as their residence and thereafter held it with the intention of renting it. Continuous efforts were made to rent the property from that time until March 23, 1960, when such efforts were abandoned and the decision was made to sell it. Under the circumstances, it is our conclusion that from January 1 to March 23, 1960, the property was held by the petitioners for the production of income, within the meaning of section 167 and section 212 and the regulations under section 212, [4] namely rents, thus rendering the provisions of section 62(5) of the Code applicable. *182 It follows that the amount of $106.56 expended by the petitioners for telephone calls, advertisement, and travel in attempting to rent the property is deductible under section 62(5) of the Code. Also, any amounts expended for maintenance of the property during the time that it was held for the production of rents, namely, during the period January 1 to March 23, 1960, are deductible under section 62(5), but amounts expended after March 23, 1960, when the property was held for sale, are not deductible. The respondent on brief does not question the amount of expenditures made and concedes that a reasonable allowance for depreciation of the property would be $250 per year, but he contends that the petitioners have failed to show the portion of the expenditures and depreciation properly attributable to the period January 1 to March 23, 1960. We think, however, that the record affords a reasonable basis for an allocation of the amounts to the period in 1960 before and after March 23. In the exercise of our best judgment, we have concluded and have found as a fact that one-half of the amounts of $76.70 and $17.36 paid for heating oil and electricity, respectively, are attributable *183 to the period prior to March 23. We have also found that the full amount of $26.30 expended for furnace service is attributable to such period. These amounts will be allowed as deductions in the recomputation under Rule 50. However, we have concluded that the amount of $5 expended for yard upkeep is not attributable to such period, and is therefore not deductible. Upon the recomputation under Rule 50, there will be allowed as a deduction depreciation on the property for the period January 1 to March 23, 1960, based upon an annual allowance of $250. Decision will be entered under Rule 50. Footnotes
1. Section 165 of the Code provides in part as follows: (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business * * *.↩
2. Section 1.165-9 of the Income Tax Regulations provides in part as follows: (a) Losses not allowed. A loss sustained on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible under section 165(a). (b) Property converted from personal use. (1) If property purchased or constructed by the taxpayer for use as his personal residence is, prior to its sale, rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss sustained on the sale of the property shall be allowed as a deduction under section 165(a)↩.
3. Thus, in Mary Laughlin Robinson, supra, we stated: Earlier cases, such as Morgan v. Commissioner, 76 Fed. (2d) 390, involving a question whether sale of an abandoned home, sold two years later without having been rented, was a sale in a "transaction entered into for profit," under section 23(e) of the Revenue Act; and Phipps v. Helvering, 124 Fed. (2d) 292, involving the question whether loss on demolition of a former home was loss in a profit transaction, do not control under the amendment of 1942 [adding section 23(a)(2) of the 1939 Code, which is the predecessor of section 212 of the 1954 Code], for had Congress, in enacting section 121 intended nothing more than to cover transactions "entered into for profit" they would, no doubt, have used that expression, already used in section 23(e) and continued therein. That language, however, was not used, either in section 121(a) as to expenses, or in section 121(c) broadening the field of allowable depreciation. In both the expression used is "held for the production of income." Obviously, Congress thereby meant something different than "transaction entered into for profit" left in section 23(e). And in William C. Horrmann, supra, we stated in part: The language of the Code sections applicable in issues one and two was property held for the production of income, and the language of section 23(e)(2) of the Code is different. In order for a loss to be deductible under that section it must be incurred in any transaction entered into for profit. In a situation where the use of the property as a personal residence has been abandoned, and where the owner has offered the property for sale or for rent and finally sells the property at a loss, that distinction in language may result in allowing a deduction in one case and not allowing a deduction of another type. * * *.↩
4. Section 1.212-1 of the Income Tax Regulations provides in part as follows: (b) The term "income" for the purpose of section 212 includes not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years * * *. * * * ordinary and necessary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. Expenses paid or incurred in managing, conserving, or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive. * * *
(h) Ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held for use as a residence by the taxpayer are not deductible. However, ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held by the taxpayer as rental property are deductible even though such property was formerly held by the taxpayer for use as a home. In this connection, it may be pointed out that paragraph (h) quoted above represents a liberalizing amendment, effected by T.D. 5331 (February 9, 1944) 1944 C.B. 98, of the regulations originally promulgated following the enactment by the Revenue Act of 1942 of section 23(a)(2) of the 1939 Code (predecessor of section 212 of the 1954 Code). Prior to amendment such paragraph read as follows (section 29.23(a)-15 of Regulations 111): Ordinary and necessary expenses in connection with the management, conservation, or maintenance of property used as a residence by the taxpayer or acquired by him for such use are not deductible, even though the taxpayer makes efforts to sell the property at a profit or to convert it to income-producing purposes, and even though the property is not occupied by the taxpayer as a residence, unless prior to the time that such expenses are incurred the property has been rented or otherwise appropriated to income-producing purposes by some affirmative act and has not been reconverted.↩