Henry B. Dawson, Jr. and Dorothy K. Dawson v. Commissioner.Dawson v. CommissionerDocket 3906-68.United States Tax CourtT.C. Memo 1972-4; 1972 Tax Ct. Memo LEXIS 248; 31 T.C.M. (CCH) 5; T.C.M. (RIA) 72004; January 10, 1972, Filed Warren L. Finch, 963 Old Shell Rd., Mobile, Ala., for petitioners, G. Clark Crampton, for respondent. ATKINSMemorandum Findings of Fact and Opinion ATKINS, Judge: Respondent determined deficiencies in income tax against the petitioners for the taxable years 1965 and 1966 in the amounts of $623.72 and $1,276.66, respectively. The issues presented for 6 decision are*249 whether the petitioners sustained a deductible loss upon the sale of their former residence in 1965 and the extent to which petitioners are entitled to deductions in 1965 and 1966 for depreciation and operating expenses of their cabin cruiser type boat. The allowable deductions for medical expenses are in issue only because they depend upon the proper amount of adjusted gross income. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Dorothy K. and Henry B. Dawson, Jr., are husband and wife and at the time of the filing of the petition herein resided in Mobile, Alabama. They filed their joint Federal income tax returns for the taxable years 1965 and 1966 with the district director of internal revenue, Birmingham, Alabama. As a matter of convenience, Henry B. Dawson, Jr., will hereinafter be referred to as the petitioner. During 1965 and 1966, petitioner was employed as a salesman by Harley Bag Sales, Inc. He and his wife had two daughters and one son who, as of the time of the trial, were 19 years old, 12 years old, and 18 years old, respectively. In 1955, petitioner acquired a house at 4350 Cedars Avenue, Springhill Station, *250 Mobile, Alabama, for $32,000. This house was used by petitioner and his family as a residence until 1964. During the latter part of 1964, they moved out of this house after the construction of a new house that petitioner was having built was completed. In connection with trying to secure financing for the new house while it was being built, petitioner paid for a F.H.A. appraisal of the Cedars Avenue house, which valued it at $28,500. On December 14, 1964, petitioner listed the Cedars Avenue house with a realtor for sale or for rent. They entered into a written agreement wherein the house was listed for sale at a price of $28,500. No mention was made in the listing agreement of a rental rate. Under the terms of the agreement, the listing was also made available to other realtors in the Mobile area through a multiple listing service in order to reach the broadest possible market. In listing the house for sale or for rent, petitioner preferred to have it sold so that he could use the proceeds to finance the cost of the new house that he had built. While the Cedars Avenue house was listed with the realtor, there were only two inquiries concerning it. The first was an inquiry by a person*251 interested in renting it for only 6 months out of every year. The second was the only offer to purchase that petitioner received, being a written offer on July 2, 1965, by Agnes M. and W. Curtis Wilson to purchase the property for $23,250. Their offer was made conditional upon their receiving an offer for the house they then resided in within 6 weeks. Under the terms of their offer, the Wilsons would begin financing the Cedars Avenue house upon petitioner's acceptance of the offer. The offer was good for 3 days and provided for occupancy by the Wilsons upon the closing of the sale. Petitioner agreed in writing to accept this offer subject to certain modifications. He agreed to give the Wilsons 6 weeks to find a buyer for their own residence. Petitioner's acceptance then provided: If at the end of 6-week period deal is not closed out, can move into 4350 Cedars and begin paying on a pro rata basis 150.00 a month until we close out. Petitioner's acceptance also provided that he would leave certain personal property in the house and remove certain other. Finally, his acceptance provided that at the price offered he would do only what the F.H.A. required and that otherwise the house*252 would be in an "as is" condition. At the end of the 6-week period specified in the offer, the Wilsons had not sold their house and were not able to finance the purchase of petitioner's house. Thereafter, they moved into the Cedars Avenue house and began paying $150 per month to the realtor who remitted it to petitioner. Petitioner had calculated that a monthly payment of $150 would cover the mortgage payment and the cost of maintaining the house and would result in a small profit to him. The sale of the Cedars Avenue house to the Wilsons was closed on December 9, 1965. At the closing petitioner rebated $50 of the last $150 monthly payment made by the Wilsons for the unexpired portion of the month remaining at the closing. The closing statement labelled this a "Rent Refund". Excluding the refund, petitioner received a total of $450 of such payments 7 from the Wilsons. None of the $150 monthly payments was credited against the purchase price. On the return for 1965, petitioner reported the $450 received from the Wilsons as rental income. He also reported a long-term capital loss of $5,641.85 on the sale of the Cedars Avenue house, computed as follows: F.H.A. Appraisal at time of conversion$28,500.00Date 4/1/65Expense of SaleFederal Reserve Stamps$ 25.85Tonsmeire & McFadden10.00Title Insurance Co125.00Commission - Art Gray & Co.1,145.00Discount - Realty Mortgage Co.321.00Miscellaneous Expense5.001,631.85$30,131.85Less: Depreciation1,240.00Net Cost$28,891.85Selling Price December 9, 196523,250.00Net Loss($5,641.85)*253 He then claimed that the loss was deductible under section 165(a) of the Internal Revenue Code of 1954 and deducted $1,000 from ordinary income. The balance of the claimed loss was carried over to 1966, and petitioner also claimed for that year a deduction of $1,000 against ordinary income. In the notice of deficiency the respondent disallowed the claimed deduction of $1,000 for 1965 stating that it had not been established that any deductible loss was sustained in that year. He also disallowed the claimed capital loss carryover to 1966. During 1965 and 1966, petitioner owned and maintained a boat of the cabin cruiser type. It was 32 feet long and was powered by two gasoline-fueled engines. Petitioner's boat was suitable for deep sea fishing on the Gulf of Mexico. Most of the time it was berthed at Dog River and occasionally at Dauphin Island, about 23 miles away. In 1963, petitioner had obtained a license from the Coast Guard authorizing him to carry 6 or fewer passengers for hire on his boat. This license was good for 5 years. Prior to 1965, he had started to charter his boat as a sideline and hoped to gradually build it into a business that he could work*254 at full time when he retired from Harley Bag Sales, Inc. He charged $75 per day and $40 per 1/2 day to charter his boat. During 1965 and 1966, petitioner was still working full time at his job with Harley Bag Sales, Inc. He did not actively seek customers to charter his boat. He listed his name as being available for charter with the proprietor of a fishing and tackle shop on Dauphin Island. This was the normal procedure for boat charterers in the Mobile area, instead of advertising in newspapers. Petitioner also relied on word of mouth to establish that his boat was available for charter. During 1965 and 1966, petitioner's employer paid him to take various of its customers out deep sea fishing. He took these customers out whenever his employer requested that he do so. If this were on a working day during the week, his employer would let him take the day off with pay. During 1965, Harley Bag Sales, Inc., paid petitioner a total of $865 to charter his boat for the following trips: DateAmount2-28-65$ 40.006- 5-6575.006- 6-6575.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.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.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.008- 1-6575.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.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.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.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.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.00Total$865.00*255 During 1966, it paid him a total of $1,050 for the following trips: DateAmount4- 2-66$ 75.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.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.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.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.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.008- 5-6675.008- 6-6675.008- 7-6675.00DateAmount9-24-66$ 75.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.0010-21-6675.0010-22-6675.0010-29-6675.00Total$1,050.00 During 1965 and 1966, Harley Bag Sales, Inc. was the only one to pay petitioner to take people out on his boat. In addition to taking the boat out on charters, petitioner also took it out on other occasions in 1965 and 1966 and purchased gasoline as follows: Cost ofNumber ofGasolineDateGallonsPurchased19656-21-6580.2$19.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.430.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.017.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.226.957- 9-6546.716.297-10-65124.043.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.620.118- 4-6559.820.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.019.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.219.968-23-65(unknown)29.789-19-65140.250.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.99.06Total$323.8619664- 9-6649.2$ 17.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.826.015-27-66191.268.655-28-66(none)(none)5-29-66101.935.857-24-66103.636.188-19-66331.055.629-29-66120.020.2010- 1-6647.29.00Total$268.67*256 Sometimes he took the boat out by himself in order to run the engines. On other occasions he took out on fishing trips people who had gratuitously helped him to maintain the boat. There never had been any agreement in advance that petitioner would take such people out in exchange for their help in maintaining the boat. Petitioner did this as a way of showing his appreciation for their help. On such trips, petitioner himself fished when he wanted to. During the late fall and winter the weather was cold and uncomfortable and he usually did not take the boat out during that period. During 1965 and 1966, petitioner had to make a number of repairs to his boat. He did not keep a log book of the use of the boat. The only record that he kept was of the trips when it was chartered by his employer for its customers. Petitioner has been interested in boats and fishing since his childhood. He enjoyed his boat and going deep sea fishing. His wife and children did not enjoy his boat. Petitioner's wife did not like to go out on the boat and did so only on a few occasions during 1965 and 1966 to help entertain when wives of the customers for whom petitioner's employer chartered the boat went along*257 on fishing trips. Other than this, petitioner's wife was only on the boat a few times when it was berthed to help petitioner work on it. During 1965 and 1966, his children did not go out on the boat because they had gotten seasick on it in the past. Petitioner had a smaller outboard motor boat which they enjoyed using to water ski on inland waterways. On the returns for 1965 and 1966, petitioner reported the operation of his boat as a separate business. He reported the amounts received from his employer for chartering his boat as the only gross receipts of such business and deducted depreciation on the boat and related equipment and the other expenses of operating the boat from such receipts. For 1965 and 1966, he claimed net losses from his boat operations in the respective amounts of $2,677.82 and $4,781.46, computed as follows: 19651966Gross receipts$ 865.00$1,050.00Deductions:Depreciation$2,161.21$3,462.92Rent344.90370.00Repairs219.331,006.52Insurance265.00255.00Gasoline and oil455.14245.00Telephone80.7451.54Supplies16.50240.48Legal fees200.00$3,542.82$5,831.46Net Loss$2,677.82$4,781.46*258 9 In the notice of deficiency the respondent recomputed the amounts of depreciation sustained on the boat in 1965 and 1966 to be $1,438.47 and $3,848.87, respectively. He then disallowed 52% of the $1,438.47 for 1965, or $748, as being for peitioner's petrsonal use of the boat in 1965, and 39.13% of the $3,848.87 for 1966, or $1,506.06, as being for petitioner's personal use of the boat in 1966. Respondent also disallowed 52%, or $708.86, of the other deductions for 1965 and 39.13%, or $833.14, of the other deductions for 1966, with the explanation that the disallowed amounts represented petitioner's personal use of the boat in 1965 and 1966 which were not deductible under section 262 of the Internal Revenue Code of 1954. Opinion The first question presented for decision is whether petitioners sustained a deductible loss upon the sale of their former residence in 1965. On brief, the respondent argues that petitioners did not convert their former residence into income-producing property and that therefore any loss sustained upon its sale in 1965 is not deductible under section 165 of the Internal Revenue Code of 1954. 1 Respondent*259 also argues that petitioners have not established the basis for determining loss on their former residence under the provisions of section 1.165-9(b) of the Income Tax Regulations, 2 and that therefore it has not been established that any loss was sustained. *260 The petitioners have filed no briefs in this case. We must, therefore, ascertain their contentions from the position they adopted in their return for 1965, in their petition, and at the trial. At the outset it should be stated that the petitioners do not contend that the property was converted to an income-producing purpose as a result of their listing of the property with a realtor for sale or for rent on December 14, 1964. In any event it has been long settled that a mere offering of a former residence for sale or for rent does not constitute such a conversion and therefore does not constitute a transaction entered into for profit within the meaning of the statute. Allen L. Grammer, 12 T.C. 34. On their return for 1965, the petitioners set forth April 1, 1965, as the date of conversion of their former residence into income-producing property, stating therein that on that date they began receiving rental payments for the property. The evidence of record fails to establish any significance to the date April 1, 1965. The first thing of importance that happened with regard to the former residence after it was listed for sale or for rent occurred on July 2, 1965, when*261 petitioners received an offer to purchase it. Petitioners accepted this offer with modifications, and we have set forth the details of their written acceptance in our Findings of Fact. The offerors were unable to secure financing for petitioners' residence within the 6 weeks specified in the agreement. Thereafter, they moved into petitioners' former residence and paid petitioners $150 per month until the sale was completed. Petitioner in his testimony tried to establish that the agreement with the offerors to occupy the premises in exchange for a payment of $150 per month was a rental arrangement, independent of the original offer and acceptance. He testified that he agreed to rent it to the offerors after they were unsuccessful in financing the purchase, that the rental agreement was only on a month-to-month basis, that he would have sold the residence at any time if he 10 had received another offer, and that he did not know whether the original offerors would actually purchase the residence until the sale was finally completed. However, it seems clear to us that the terms of the written offer of July 2, 1965 and petitioners' acceptance thereof contemplated a sale. The offerors*262 were allowed 6 weeks within which to find a purchaser for the residence which they then occupied. The terms of petitioners' acceptance then provided that, if they were unsuccessful, they could move into the 4350 Cedars Avenue residence and pay $150 per month until the sale was closed out. It thus appears that the purported rental agreement was executed simultaneously with the sales agreement and was only incidental to the sale of the property. By its terms the "rental" was only an interim measure until the sale was completed. Further, we think the fact that the $150 monthly payments were calculated to cover the property expenses with only a small profit to petitioners also indicates that the purported rental agreement should not be accorded an independent, profit-inspired significance. Accordingly, we hold that the petitioners have failed to establish that their former residence was converted prior to its sale to income-producing purposes, and that they have therefore failed to establish that any loss upon its disposition would be deductible under section 165. See Gerald Melone, 45 T.C. 501. It is therefore unnecessary for us to consider whether petitioners have established*263 the property's adjusted basis for purposes of determining loss upon its sale. The second issue presented for decision is the extent to which petitioners are entitled to deduct depreciation and operating expenses for their boat during 1965 and 1966. Respondent has allocated the deductions between business and personal use, allowing only the former. Respondent argues that only the trips when petitioners' boat was chartered for hire represent business use. In 1965, of the 25 days when the boat was taken out, 12 days, or 48 percent, were on charter trips and 13 days, or 52 percent, were not. In 1966, of the 23 days when the boat was taken out, 14 days, or 60.87 percent, were on charter trips and 9 days, or 39.13 percent, were not. Respondent contends that in 1965, 52 percent and in 1966, 39.13 percent, of the deductions in question are nondeductible personal expenses under section 262 of the Code. 3Petitioners reported the operation of the boat in 1965 and 1966 as a separate business, deducting all expenses and*264 depreciation. The evidence introduced, however, is not sufficient to contradict respondent's determination that when the boat was taken out other than on charter trips its use was personal and not business. Accordingly, we must approve the respondent's determination in this respect. Decision will be entered for the respondent. Footnotes1. Section 165 of the Code provides in part as follows: (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * ↩2. Section 1.165-9(b) provides in part as follows: Property converted from personal use. (1) If property purchased or constructed by the taxpayer for use as his personal residence is, prior to its sale, rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss sustained on the sale of the property shall be allowed as a deduction under section 165(a). (2) The loss allowed under this paragraph upon the sale of the property shall be the excess of the adjusted basis prescribed in § 1.1011-1 for determining loss over the amount realized from the sale. For this purpose, the adjusted basis for determining loss shall be the lesser of either of the following amounts, adjusted as prescribed in § 1.1011-1 for the period subsequent to the conversion of the property to income-producing purposes: (i) The fair market value of the property at the time of conversion, or (ii) The adjusted basis for loss, at the time of conversion, determined under § 1.1011-1 but without reference to the fair market value.↩3. Section 262 provides as follows: Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩