LOUIS F. McAULEY and PATRICIA T. McAULEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McAuley v. Commissioner
Docket No. 4759-75.
United States Tax Court
T.C. Memo 1976-276; 1976 Tax Ct. Memo LEXIS 126; 35 T.C.M. (CCH) 1236; T.C.M. (RIA) 760276; August 31, 1976, Filed Louis F. McAuley, pro se. Kenneth Bersani, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1971 in the amount of $1,598.09. The issues for decision are (1) whether petitioners are entitled to a deduction of a loss in the amount of $3,588.90 or any part thereof resulting from the sale of a house which they used as a personal residence until September 1, 1970, and (2) if petitioners are not entitled to the claimed loss deduction are they entitled to any deduction for the cost of maintenance and depreciation on the house in 1971. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Binghamton, New York at the time of the filing of the petition in this case filed a joint Federal income tax return with the North-Atlantic Service Center, Andover, Massachusetts. *128 Petitioners moved to Binghamton, New York in September 1969. Each of them had accepted a teaching position at the State University of New York at Binghamton commencing in the fall of 1969. Both have continued to be employed as professors at the State University of New York and Mr. McAuley, at the time of the trial of this case, was chairman of the mat8ematics department at that university. At the time petitioners moved to Binghamton they owned a house in New Jersey which they had placed on the market for sale. Since this house had not been sold at the time petitioners moved to Binghamton, they looked for a house in Binghamton to rent until such time as they sold their prior residence in New Jersey. Being unable to find a home for rent which they considered satisfactory, they purchased a home on Leroy Street in Binghamton late in August 1969 which they intended to use as their personal residence until such time as they were able to purchase a more suitable home. The property on Leroy Street had been advertised at an asking price of $40,000, but the purchase price paid by petitioners for the property was $34,000. Petitioners resided at the Leroy Street property from September 1, 1969, until *129 September 1, 1970. On or about September 1, 1970, having sold their prior home in New Jersey for $54,000, petitioners purchased a residence on Riverside Drive in Binghamton, New York for $38,000 which they considered more suitable than the Leroy Street property for use as their personal residence. When they purchased the residence on Riverside Drive, petitioners planned to retain the property on Leroy Street for rental investment property. Mr. McAuley was of the opinion that because of the difficulty he had experienced in renting a satisfactory home when petitioners moved to Binghamton that other professors would have the same problem and the house on Leroy Street would be good investment property. Between August 29, 1969, and September 1, 1970, petitioners spent $2,100 in improving the Leroy Street property. The improvements consisted of installation of storm windows, conversion of a porch into a room, installation of bookshelves in the new room, and the planting of shrubs. In addition to the cash expenditures, Mr. McAuley did some work himself, such as painting, installing bookcases, and planting of shrubbery. Beginning August 5, 1970, and ending September 9, 1970, petitioners *130 advertised the Leroy Street house for rent in the Binghamton Evening News. On September 3, 1970, petitioners listed the Leroy Street property for rent with the housing office of the State University of New York and left the property listed with the housing office until June 28, 1971. Initially the listing merely showed the rent was "negotiable" but thereafter petitioners reported to the housing office that they would not consider less than $250 a month for the property, and a notation to this effect was made on the listing. Some time in August before petitioners moved from the Leroy Street property to their new home on Riverside Drive, a professor who was coming to the State University of New York at Binghamton to serve one year as a visiting professor, after looking at petitioners' house on Leroy Street, offered to rent the house from petitioners. At that juncture petitioners were asking $300 a month rent for the house. After some negotiation the visiting professor offered petitioners $250 a month rental for the house and petitioners made a counteroffer $275of a month. The visiting professor would not meet petitioners' offer and therefore did not rent petitioners' house. Thereafter *131 petitioners received several inquiries concerning rental of the Leroy Street property, but received no further offer from anyone to rent the property. From late September through the time in June 1971 when petitioners listed the Leroy Street property for sale with a realtor in Binghamton, New York, Mr. McAuley called several realtors to tell them about the availability of the Leroy Street property for rent. Although he did not list the property with any of the realtors, Mr. McAuley would inform them that if they had a prospective tenant he would work out an arrangement with them with respect to the commission from renting the property for him. During the period from December 1970 through mid-1971 there was an increase in the rate of unemployment in the Binghamton area and a sharp fall in manufacturing employment. Manufacturing employment fell from approximately 45,000 in 1969 to 43,000 in 1970 and further dropped to 38,700 in 1971. In October or early November 1971 the State University of New York at Binghamton suspended approval of filling of personnel vacancies at the university and on April 9, 1971, issued a memorandum declaring a total freeze on personnel appointments at *132 the university. Because of the economic situation in Binghamton, in the spring of 1971 Mr. McAuley decided that petitioners might continue to be unsuccessful in obtaining a satisfactory tenant for the property on Leroy Street and for that reason listed the property for sale with a broker in June 1971. On or about July 21, 1971, petitioners sold the Leroy Street property for a sales price of $33,800. The Leroy Street property was not rented by petitioners at any time. It remained vacant from September 1, 1970, until it was sold in late July of 1971. During the period from September 1, 1970, when they vacated the Leroy Street property through July 21, 1971, when the sale of the property was closed, petitioners spent $525 in maintenance of the property. From January 1, 1971, to July 21, 1971, the amount petitioners expended for maintenance was $306.25 and the amount expended for insurance of the property was $138. If the property is considered to be converted to rental property on September 1, 1970, the parties agree that allowable depreciation of the improvements would be $529.80 for the period September 1, 1970 through December 31, 1970, and $927.15 for the period January 1, 1971 through *133 July 21, 1971. On their joint 1971 return petitioners deducted $3,588.90 as an ordinary loss resulting from the sale of the Leroy Street property computed as follows: Purchase Price (1969)
$34,000.00
Plus: Mortgage tax
145.00
Attorney's fees
340.00
Filing fee
5.00
Capital Improvements
2,100.00
Total
$36,590.00
Sale Price (1971)
$33,800.00
Less: Transfer tax
37.40
Discharge of mortgage
3.00
Attorney's fees
233.50
Cost of maintenance
from September 1,
1970 - July 21, 1971
525.00
Total
$33,001.10
Loss
$3,588.90
Respondent in his notice of deficiency disallowed the claimed loss deduction with the following explanation: The loss of $3,588.90 you claimed in 1971 as a result of the sale of the house at 219 Leroy Street, Binghamton, New York is not allowable because you have not established that this property was used in a trade or business or in the production of income. Further, you have not established a cost basis which exceeds the sales price of the house. Accordingly your taxable income is increased $3,588.90. At the trial, when respondent contended that even if petitioners had established any conversion of the property they had *134 not established the fair market value of the property at the time of conversion or the proper adjustment for depreciation from the time of conversion of the property to the time of its sale for the purpose of determining the necessary adjustment in basis by depreciation allowable, petitioners pointed out that having claimed the loss they had claimed no deduction for depreciation in either 1970 or 1971 but had claimed their maintenance expenses for the entire period in connection with claiming the loss. Although not clearly so stated we interpret the statement of Mr. McAuley at the trial to in effect be an alternative claim for maintenance expenses for the year 1971 and depreciation deductions for this period if the claimed loss deduction was disallowed. Following the trial, the parties stipulated the maintenance and insurance expenses and the amount of depreciation allocable to the year 1971, having stated to the Court when petitioners raised the problem toward the conclusion of the trial that they would attempt to stipulate these figures and believed they would be able to so stipulate. OPINION *135 Section 165(a), I.R.C. 1954, [1] provides for the allowance of a deduction for any loss sustained in the taxable year and not compensated by insurance or otherwise. However, section 165(c) limits such losses in the case of individuals to losses incurred in a trade or business or "losses incurred in any transaction entered into for profit, though not connected with a trade or business" and casualty losses. [2]Section 1.165-9(a), Income Tax Regs., states that losses on the sale of residential property purchased or constructed and so used by a taxpayer up to the time of the sale are not deductible under section 165(a). Section 1.165-9(b) of respondent's regulations [3] provides that if property purchased or constructed by a taxpayer for use as a personal residence is prior to sale "rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale" a loss sustained on the sale of the property shall be allowed under section 165(a). The amount of the loss is the excess of the adjusted basis of the property for determining loss over the amount realized from the sale. The adjusted basis *136 shall be the lesser of the cost of the property or its fair market value at the time of conversion with the necessary adjustments to such basis as prescribed in section 1.1011-1, Income Tax Regs.
*137 Respondent's position in this case is that since the Leroy Street property was not rented by petitioners prior to its sale and was not used by them at any time prior to its sale for incomeproducing purposes, the loss on its sale is a loss on the sale of residential property and therefore not deductible. Respondent in the alternative contends that petitioners have failed to show the fair market value of the house on Leroy Street as of September 1, 1970, when petitioners moved out of the house, and therefore even had there been a conversion of the property petitioners have failed to establish that any loss resulted from the sale of the property under the provisions of section 1.165-9(b), Income Tax Regs.
Petitioners contend that when they offered the Leroy Street property for rent they effectively converted the property to business property so that they should be entitled to the claimed loss deduction and apparently further contend, though this is not clear, that in any event the loss on the sale of the property was a loss incurred in a transaction entered into for profit even though not connected with a trade or business and therefore is an allowable *138 deduction under section 165(c). The cases petitioners rely on in support of their contention are all cases where property which had constituted a taxpayer's home had actually been rented for a fair rental by the taxpayer prior to the time the property was sold. [4]
*139 The facts here clearly show that petitioners' Leroy Street property was never at any time rented. In this type of situation we have consistently held that the former residence when it is sold is not business property and that the loss occurring on the sale of the property is not a loss in a transaction entered into for profit. The case of Allen L. Grammer,12 T.C. 34 (1949), is not distinguishable factually from the instant case. In that case the taxpayer listed his former residence with a real estate broker for rent for a period of approximately a year and a half before listing the property for sale. In holding that the loss on the sale of the property was not deductible, we pointed out that the original acquisition there, as here, had been a personal one and "unless there has been a subsequent 'transaction' which was 'profit-inspired'" the loss would not be deductible. We went on to state (at 37): It is recognized by the parties that a mere listing with a broker for sale or rent, Morgan v. Commissioner (C.C.A., 5th Cir.), 76 Fed. (2d) 390; certiorari *140 denied, 296 U.S. 601; Rumsey v. Commissioner (C.C.A., 2d Cir.), 82 Fed. (2d) 158; certiorari denied, 299 U.S. 552; Phipps v. Helvering (C.A.D.C.), 124 Fed. (2d) 292; or even for rent, Schmidlapp v. Commissioner (C.C.A., 2d Cir.), 96 Fed. (2d) 680, does not constitute such a "transaction" as satisfies the statutory requirement, or, in the words of the regulation, [Footnote omitted] that the property has not thereby been "otherwise appropriated to income-producing purposes." The statute and regulations in effect at the time of the decision in the Grammer case are the same as those applicable to the instant case. In the Grammer case we pointed out that merely by offering a property for rent the property had not been appropriated to business use so that the taxpayer had foreclosed the possibility of his own resumption of the premises or his sale of the premises at whatever time he chose.We stressed in that case the language of the regulations which required that the appropriation of the property to income-producing purposes be accompanied by a use of the property for such purposes up until the *141 time of its sale. Clearly here, as in the Grammer case, the mere offering of petitioners' property for rent did not create a use of the property for income-producing purposes. The Grammer case has been consistently followed by this Court and losses on sales of a former residence which has not been actually rented but merely offered for rent have been consistently disallowed as not deductible under section 165. See Ellery Willis Newton,57 T.C. 245, 248 (1971); Edward N. Wilson,49 T.C. 406, 415 (1968), reversed and remanded on other grounds 412 F. 2d 314 (6th Cir. 1969); and George W. Mitchell,47 T.C. 120, 128 (1966). [5]
Petitioners in their argument in support of the contention that they should be allowed to deduct the loss on the sale of the Leroy Street house referred to certain cases which involved *142 claimed deductions for expenses connected with property offered for rent but not rented and property offered for sale. These cases do not involve loss deductions under section 165 but rather expense deductions claimed under section 212, [6] or depreciation deductions under section 167(a)(2). [7] These sections allow a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year for the "management, conservation, or maintenance of property held for the production of income," and depreciation with respect to property held for the production of income. The philosophy underlying these cases is that where property is held for rent by a taxpayer or held for investment to be later sold at a profit it may be held for production of income and therefore the expenses incurred in so holding the property may be deductible. In Frank A. Newcombe,54 T.C. 1298 (1970), we discussed the cases and regulations dealing with the deduction of expenses in connection with property being held for the production of income. See also Richard R. Riss, Sr.,56 T.C. 388, 423 (1971), remanded on another issue 478 F. 2d 1160 (8th Cir. 1973); *143 and Lowry v. United States,384 F. Supp. 257 (D.N.H. 1974), particularly Footnote 5 on Page 261, citing a number of Memorandum Opinions of this Court. We recognize that the distinction between cases involving deductions of expenses and depreciation under sections 212 and 167 may seem difficult of comprehension to petitioners. However, this distinction *144 has long been recognized. [8]
*145 The bona fide placement of property on the rental market has been held to be a sufficient holding of the property for production of income to justify the deduction of expenses paid by a taxpayer in connection with the holding of the property and depreciation incurred with respect to the property. In our view the facts show that petitioners had offered the property for rent with the bona fide intent to rent it if they had obtained an offer for an amount they considered an adequate rental payment. We therefore conclude that petitioners are entitled to a deduction in the year 1971 of the maintenance expenses of $306.25 and insurance expenses of $138 which they paid in that year in connection with holding the Leroy Street property for rent and the depreciation of $927.15 applicable to the property from January 1, 1971, up to the date of the sale of the property, if this issue has been properly presented to the Court. While petitioners claimed their expenses in maintaining the Leroy Street property available for renting as part of their claimed loss on the sale of the property in 1971, they *146 did not precisely claim either in their return or in their petition these expenses or depreciation on the property as items deductible under sections 212 and 167. However, in our view statements of Mr. McAuley at the trial were sufficient to indicate that petitioners were making an alternative claim for deduction of these items and a review of the record indicates to us that counsel for respondent understood petitioners were making such an alternative claim and raised no objection to the pleadings not being sufficient to properly raise the issue. Under these circumstances and in view of the provision of Rule 41(b) of our Rules of Practice that permits consideration of issues not in the pleadings which are tried by implied consent of the parties, we conclude that the issue of deductibility of the maintenance and insurance expenses and depreciation on the Leroy Street property under section 212(a)(2) and section 167 are properly in issue before us. Therefore we hold that petitioners are not entitled to any deduction under section 165 for loss on the sale of the Leroy Street house but are entitled to deduct the depreciation for the period from January 1, 1971, to the date of the *147 sale of the house in 1971, and the maintenance and insurance expenses they paid with respect to the house in 1971 under section 167(a)(2) and section 212. Decision will be entered under Rule 155. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise stated. ↩
2. SEC. 165. LOSSES. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * * ↩
3. Sec. 1.165-9 [Income Tax Regs.] Sale of residential property. (a) Losses not allowed. A loss sustained on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible under section 165(a). (b) Property converted from personal use. (1) If property purchased or constructed by the taxpayer for use as his personal residence is, prior to its sale, rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss sustained on the sale of the property shall be allowed as a deduction under section 165(a). (2) The loss allowed under this paragraph upon the sale of the property shall be the excess of the adjusted basis prescribed in section 1.1011-1 for determining loss over the amount realized from the sale. For this purpose, the adjusted basis for determining loss shall be the lesser of either of the following amounts, adjusted as prescribed in section 1.1011-1 for the period subsequent to the conversion of the property to income-producing purposes: (i) The fair market value of the property at the time of conversion, or (ii) The adjusted basis for loss, at the time of conversion, determined under section 1.1011-1 but without reference to the fair market value. * * *↩
4. Petitioners place strong reliance on the case of Paul H. Rechnitzer,T.C. Memo. 1967-55. This case involves a situation where property was rented to a taxpayer for a period of several months with an option to purchase the property during the rental period. Petitioners argue that they should not be penalized because of entering a straight-line sale with the purchasers of their Leroy Street property instead of a lease with option to purchase. However, in the Rechnitzer case we distinguished cases involving property merely offered for rent from the case of an actual rental by pointing out that where the property was actually rented the lessor destroyed his ability to reoccupy the property. On this basis we distinguished such cases as Morgan v. Commissioner,76 F. 2d 390 (5th Cir. 1935), affirming a Memorandum Opinion of this Court, and E. R. Fenimore Johnson,19 T.C. 93↩ (1952).
5. In the recent case of Ray A. Brinker,T.C. Memo. 1975-244, we again reiterated our long recognition of the requirement that a taxpayer do more than list his residential property for rent in order to be entitled to a deduction under sec. 165↩ of a loss on the sale of the property.
6. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * *↩
7. SEC. 167. DEPRECIATION. (a) General Rule.--There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)-- * * *
(2) of property held for the production of income.↩
8. In Theodore H. Cowles, Jr.,T.C. Memo. 1970-198, 29 TCM 884, 885, 39 P-H Memo. T.C. par.70,198, p.970 (1970), we stated in this regard: Concededly this case reflects some conceptual difficulties. It is not readily apparent how a mere offer to rent property is sufficient to justify a holding that it is "held for the production of income" within the meaning of sections 212 and 167 but not sufficient to permit a holding that it is "otherwise appropriated to income-producing purposes" within the meaning of section 1.165-9, Income Tax Regs. But such a distinction has long been established in the decided cases. Warner v. Commissioner,167 F. 2d 633 (C.A. 2, 1948), affirming per curiam a Memorandum Opinion of this Court; William C. Horrmann,17 T.C. 903 (1951); E. R. Fenimore Johnson,19 T.C. 93, 98 (1952); Mary Laughlin Robinson,2 T.C. 305, 309 (1943); see Mertens, supra. [Footnote omitted] Perhaps if we were writing on a clean slate, we would be inclined to re-examine this distinction. But, in light of the foregoing decisions, as well as those hereinafter cited, we are unwilling to chart a new course. See J. K. Downer,48 T.C. 86, 90-92 (1967). Nor does the fact that the sale of the property was incident to Theodore's transfer of employment support a conclusion in petitioners' favor. Edward N. Wilson,49 T.C. 406, 415 (1968), reversed and remanded on other grounds 412 F. 2d 314 (C.A. 6, 1969). A comparable statement was also made in the case of Ray A. Brinker,T.C. Memo. 1975-244. In the Cowles case we pointed out that respondent had conceded that offers to rent furnished a sufficient basis to entitle a taxpayer to deductions under sec. 212↩ of expenses in connection with property held for the production of income.