Frank A. and Helen A. Newcombe, Petitioners v. Commissioner of Internal Revenue, Respondent

Docket No. 2272–68.   Filed June 17, 1970.

*Richard A. Williams*, for the petitioners.
*W. B. Riley* and *Robert S. Leigh*, for the respondent.

OPINION

Tannenwald, *Judge:* Respondent determined a deficiency of $2,059.95 in petitioners' income taxes for their taxable year 1966. The only issue is the deductibility of expenses incurred during the period in which a house, previously used by petitioners as their residence, was held for sale.

All the facts have been established by admissions in the pleadings and are found accordingly.

Petitioners are husband and wife and had their legal residence in Naples, Fla., at the time of the filing of their petition herein. They filed a joint income tax return for 1966 with the district director of internal revenue at Jacksonville, Fla.

Until December 1, 1965, petitioner Frank A. Newcombe (hereinafter referred to as Frank) was employed and he and his wife resided in a house at Pine Bluff, Ark.

Petitioners' total adjusted cost basis in the house on December 1, 1965, was $70,887.39, allocated $3,500 to the land and $67,387.39 to the house. The total fair market value on that date was $60,000, allocated $52,000 to the house and improvements and $8,000 to the land.

On December 1, 1965, Frank retired and shortly thereafter he and his wife moved to Naples, Fla. In Naples, they purchased a residence in which they have since continuously resided. After this move, petitioners never again occupied the Pine Bluff house. It remained unoccupied from December 1, 1965, until it was sold. Frank did return to Pine Bluff three times during 1966 to attend certain board meetings, but each of these times he stayed at a motel or with his adult daughter, who resided in her own home in Pine Bluff.

Petitioners listed their Pine Bluff house for sale on or about December 1, 1965, with a local realtor. They never attempted to rent the house. The price at which it was initially listed for sale was $70,000. Con-

tinuing efforts to sell during all of 1966 were unsuccessful. It was finally sold for $50,000 on or about February 1, 1967.

During 1966, petitioners incurred and paid the following maintenance expenses, totaling $1,146, in connection with their Pine Bluff house:

| Expense | Amount | Expense | Amount |
|---|---|---|---|
| Maid and yard service | $451 | Sanitation | $25 |
| Telephone | 71 | Water | 46 |
| Gas | 234 | Painting white trim on house | 178 |
| Electricity | 132 | Plumbing repair | 9 |

On their 1966 income tax return, petitioners claimed these expenses as deductions and also claimed $2,600 in depreciation as a deduction, utilizing a $52,000 basis, a 20-year life, and the straight-line method.

The threshold question involved herein is whether, during 1966, petitioners' former residence at Pine Bluff, Ark., constituted "property held for the production of income" so as to entitle them to deductions for maintenance expenses and depreciation under sections 212(2)[1] and 167(a)(2),[2] respectively. The quoted phrase in both sections stems from the Revenue Act of 1942, 56 Stat. 798, 819. Since the two sections have the same purpose, the phrase should be given the same construction in one as in the other and neither party has argued otherwise. *Commissioner* v. *Ridgeway's Estate*, 291 F. 2d 257, 259 (C.A. 3, 1961), affirming 33 T.C. 1000 (1960); *William C. Horrmann*, 17 T.C. 903, 908 (1951).

Each of the parties seeks the adoption of a single standard for determination. Petitioners argue that the mere abandonment of personal use of property plus offering it for sale is sufficient to satisfy the statutory requirements. Respondent disagrees and urges that we hold that there can be a conversion of a personal residence to an income-producing use only where the property is rented or offered for rent. We do not share the penchant for polarization which the arguments of the parties reflect. Rather, we believe that a variety of factors must be

---

[1] Statutory references, except where otherwise indicated, are to the Internal Revenue Code of 1954.
SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.
In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

\* \* \* \* \* \* \*

(2) for the management, conservation, or maintenance of property held for the production of income; \* \* \*
[2] SEC. 167. DEPRECIATION.
(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

\* \* \* \* \* \* \*

(2) of property held for the production of income.

weighed and, on this basis, we have concluded that petitioners' deductions should not be sustained.

In reaching this conclusion, we have taken into account the following considerations:

(1) Petitioners actually occupied the Pine Bluff house as their personal residence for a substantial period of time. This factor has been emphasized in the decided cases as indicative of the personal nature of the expenses subsequently incurred while holding the property for postoccupancy sale. *Charles F. Neave*, 17 T.C. 1237 (1952); *Warren Leslie, Sr.*, 6 T.C. 488 (1946). Similarly, the total absence or limited presence of this factor has made it easier to find that the statutory requirements have been met, e.g., with respect to inherited property or property acquired by purchase, which is then offered for sale. *George W. Mitchell*, 47 T.C. 120 (1966).[3] Compare *Mary E. Crawford*, 16 T.C. 678 (1951).

(2) The house was not occupied during the period between its abandonment as the petitioners' residence and its ultimate disposition. Under such circumstances, the house was potentially available to petitioners for their personal use. See *Rumsey* v. *Commissioner*, 82 F. 2d 158, 159, 160 (C.A. 2, 1936), affirming a Memorandum Opinion of this Court; *Morgan* v. *Commissioner*, 76 F. 2d 390 (C.A. 5, 1935), affirming a Memorandum Opinion of this Court. Compare *Allen L. Grammer*, 12 T.C. 34 (1949). To be sure, the facts herein show that petitioners did not reoccupy the house, even temporarily, and it appears that realistically it would have been difficult for Frank to do so during trips to Pine Bluff.[4] As a consequence, this element is of minor significance herein.

(3) Some of the decided cases have emphasized the recreational character of the property as militating against the taxpayer's position and there is some indication that buildings not being personally used may, without more, qualify as property "held for the production of income." See *May* v. *Commissioner*, 299 F. 2d 725, 727 (C.A. 4, 1962), affirming 35 T.C. 865 (1961). While recreational property such as the yacht involved in *May* may make the decisional task easier,[5] it does not necessarily follow that buildings fall automatically into a preferred category; the indication to the contrary in *May* was clearly not necessary to the decision of the Court of Appeals.

(4) Offers to rent are an important element in the taxpayer's favor. See *May* v. *Commissioner*, 229 F. 2d at 728. We are not inclined, how-

---

[3] See also *Peter Seletos,* T.C. Memo. 1956–283; *Helene I. Fagan,* a Memorandum Opinion of this Court dated Jan. 26, 1950; *Anna C. Newberry,* a Memorandum Opinion of this Court dated Feb. 27, 1945.

[4] There is no specific evidence that petitioners removed the contents of the Pine Bluff house, but we infer that they did.

[5] See also *George W. Ritter,* a Memorandum Opinion of this Court dated Oct. 9, 1946.

ever, to accept respondent's position that the presence or the absence of rental offers should be the focal point.[6] In some cases, their presence may be of minimal significance because of the adverse state of the market for rental property.[7] Moreover, the absence of offers to rent may sometimes be explainable in terms of their adverse impact on efforts to sell the property. See *Hulet P. Smith*, T.C. Memo. 1967-28, affirmed per curiam 397 F. 2d 804 (C.A. 9, 1968) ; 66 Mich. L. Rev. 562, 567, 569 (1968).

(5) Another element is the presence of offers for sale. Merely offering property for sale does not, as petitioners argue, *necessarily* work a conversion into "property held for the production of income." *May* v. *Commissioner, supra; Charles F. Neave, supra; Warren Leslie, Sr., supra*. But it does not follow, as respondent argues, that offers for sale can *never* effect such a conversion. There is no requirement under section 212(2) that the income be recurrent in nature, as rent normally is. On particular facts, property held solely for sale may be "property held for the production of income." So say the committee reports to the 1942 Act. H. Rept. No. 2333, 77th Cong., 2d Sess., p. 75 (1942) ; S. Rept. No. 1631, 77th Cong., 2d Sess., p. 87 (1942).[8] The regulations echo those reports. Sec. 1.212-1(b), Income Tax Regs. Cf. *George W. Mitchell, supra, May* v. *Commissioner*, 299 F. 2d at 727. Compare *Mary Laughlin Robinson*, 2 T.C. 305, 308 (1943), on remand from 134 F. 2d 168 (C.A. 3, 1943), with *Warren Leslie, Sr.*, 6 T.C. at 494.

If the taxpayer is merely seeking to recover his investment or a part thereof, it will be difficult to find that the property was "held for the

---

[6] We recognize that sec. 1.212-1(h), Income Tax Regs., provides :

(h) Ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held for use as a residence by the taxpayer are not deductible. However, ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held by the taxpayer as rental property are deductible even though such property was formerly held by the taxpayer for use as a home.

We regard the second sentence of the foregoing regulations as merely illustrative and by way of contrast with the first sentence, rather than as mandating that the property must necessarily be "rental property." As a result, we are not confronted with a situation which requires us to determine the validity of the regulation.

[7] Such a market evaluation should not be equated with the test for determining the bona fides of rental efforts because of the range of good faith differences of opinion as to the likelihood of rental either within a given dollar range or at all.

[8] "Ordinary and necessary expenses so paid or incurred are deductible under section 23(a)(2) [now sec. 212(2)] even though they are not paid or incurred for the production or collection of income of the taxable year or for the management, conservation, or maintenance of property held for the production of such income. The term 'income' for the purpose comprehends not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years, *and is not confined to recurring income but applies as well to gain from the disposition of property*. Expenses incurred in managing or conserving property held for investment may be deductible under this provision even though there is no likelihood that the property will be sold at a profit or will otherwise be productive of income, and even though the property is held merely to minimize a loss with respect thereto." (Emphasis supplied.) The language of the House report is almost identical.

production of income." *May* v. *Commissioner*, 299 F. 2d at 728. Any sale under such conditions will not produce a profit since the taxpayer's basis for determining gain will be his cost. Section 61 describes income, among other things, as "(3) *Gains* derived from dealings in property." (Emphasis added.) And the committee reports at the time the predecessors of sections 167(a)(2) and 212(2) were enacted state that income is "not confined to recurring income but applies as well to *gain* from the disposition of property." (Emphasis added.) See fn. 8 *supra*. Consequently, it would appear that the property is being held simply for the production of loss and the expenses would not be deductible. Cf. *Samuel Yanow*, 44 T.C. 444 (1965), affirmed per curiam 358 F. 2d 743 (C.A. 3, 1966).

We are, of course, aware of the provision of respondent's regulations that "Expenses paid or incurred in managing, conserving, or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto." Sec. 1.212–1(b), Income Tax Regs. See also fn. 8 *supra*. But a precondition to the applicability of this provision is a determination that the property is "held for investment," i.e., for the production of income. Once that condition is attained, the subsequent absence of the economic indicators of profit, during any given period of time, will not preclude a deduction. In the initial determination whether the "investment" status exists, such absence of economic indicators may appropriately be considered.

The taxpayer must also be seeking to realize a profit representing postconversion appreciation in the market value of the property. Clearly, where the profit represents only the appreciation which took place during the period of occupany as a personal residence, it cannot be said that the property was "held for the production of income." Cf. *Heiner* v. *Tindle*, 276 U.S. 582, 585 (1928). Additionally, the determination of the taxpayer's purpose will require taking into account the facts that offers for sale often reflect merely a bargaining stance and that selling commissions and other expenses of sale must be treated as offsets against the selling price. Cf. *Spreckels* v. *Helvering*, 315 U.S. 626 (1942).

The placing of the property on the market for immediate sale, at or shortly after the time of its abandonment as a residence, will ordinarily be strong evidence that a taxpayer is not holding the property for postconversion appreciation in value. Under such circumstances, only a most exceptional situation will permit a finding that the statutory requirement has been satisfied. On the other hand, if a taxpayer believes that the value of the property may appreciate and decides

to *hold* it for some period in order to realize upon such anticipated appreciation, as well as an excess over his investment, it can be said that the property is being "held for the production of income." And this would be true regardless of whether his expectation of gain was reasonable.

The key question, in cases of the type involved herein, is the purpose or intention of the taxpayer in light of all the facts and circumstances. See *Marjorie M. P. May*, 35 T.C. 865, 878 (1961), affd. 299 F. 2d 725 (C.A. 4, 1962). In this respect, the approach is not unlike that of the so-called hobby loss cases where a similar question, namely, "expectation of profit," is the critical inquiry. See, e.g., *Margit Sigray Bessenyey*, 45 T.C. 261, 273–274 (1965), affd. 379 F. 2d 252 (C.A. 2, 1967).

Clearly, petitioners herein do not meet the necessary criteria. Their only action was to offer the Pine Bluff house for sale. This they did immediately upon its abandonment. To be sure, the property was offered at a price in excess of the then market value, but, under the circumstances herein, we cannot say that this reflected an attempt to realize on postconversion appreciation in value rather than a bargaining stance and an offset against commissions and expenses. Moreover, it does not appear that petitioners were seeking to obtain an amount in excess of their investment. Petitioners' adjusted cost basis on the date of conversion was $70,887.39, the fair market value on that date was $60,000, and the property was offered for sale on or about that date at $70,000.

We hold that, during the taxable year 1966, petitioners did not hold the Pine Bluff residence for the production of income. In so holding, we recognize that our decision in *Hulet P. Smith, supra*, reaches a contrary result on similar facts. But our statement in that case that the issue was a "question" of "law" is belied by the affirmance by the Ninth Circuit on the ground that "we are not persuaded that the Tax Court's factual finding and its consequent conclusions are clearly wrong" and the statement that "the Government makes a strong case for reversal." See 397 F. 2d at 804. We therefore consider that case inapposite and of little precedential value.

In view of our decision on the threshold issue, we need not pass upon the further contentions of the parties, regarding the availability of a depreciation deduction with respect to property held solely for sale and the proper measures of useful life and salvage value in such a situation.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

DRENNEN, *J.*, concurring: I agree with the conclusion of the majority opinion on the facts here presented; however, I am not certain how

the legal premises stated in the body of the opinion will be interpreted and applied under different factual circumstances. Hence, I feel constrained to voice my views on the legal premises to be used in determining the intent of the taxpayer in holding the property, which I agree is the basic question in these cases.

In my view in order for a taxpayer to be entitled to deduct expenses incurred with respect to holding property formerly occupied as his residence he must either rent the property or bona fide offer the property for rent after he moves out and before he sells it, or he must hold the property for appreciation in value subsequent to the time he abandons it as his residence. I do not agree that the taxpayer must prove that he was holding the property for sale at a price which would exceed his cost or tax basis in the property, i.e., at a price which would produce a tax gain, but I do believe he must show that he was holding the property after abandoning it as his residence for sale at a value that would reflect an appreciation in value over the value of the property at the time it was abandoned as taxpayer's residence.

TIETJENS, RAUM, FORRESTER, HOYT, IRWIN, and STERRETT, *JJ.*, agree with this concurring opinion.

---

FORRESTER, *J.*, concurring : I think that the majority has reached the correct result and that that result is entirely supported by the ultimate finding "it is clear that [petitioners] were not seeking to realize on possible *post-conversion* appreciation in value." (Emphasis supplied.)

The time when the conversion occurred is obviously the key, and any appreciation prior thereto would not have grown while the property was being "held for investment," (sec. 1.212–1(b), Income Tax Regs.) but while the property was being held as taxpayers' personal residence.

The foregoing raises the question, Appreciation over what basis? I believe that the only sensible answer is appreciation over the fair market value of the property at the time of conversion, for otherwise the owner of a residence which had declined in value during his occupancy would be precluded from any tax benefits in attempting to minimize his loss even though it were quite apparent that the property would appreciate in value after he had abandoned it as a residence unless he could also prove that he reasonably expected the appreciation to carry through his original tax base.

By way of dictum the majority seems to require just such excessive (for want of a better term) postconversion appreciation and I think that this dictum is wrong.

DRENNEN and RAUM, *JJ.*, agree with this concurring opinion.