WALTER E. BECKJORD and MARY JANE BECKJORD Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beckjord v. Comm'r
Docket No. 7660-71 United States Tax Court
T.C. Memo 1973-123; 1973 Tax Ct. Memo LEXIS 164; 32 T.C.M. (CCH) 541; T.C.M. (RIA) 73123; June 7, 1973, Filed Walter E. Beckjord, pro se. Juandell D. Glass, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: The Commissioner determined a deficiency in the joint income tax liability of petitioners for the taxable year 1968 in the amount of $2,575.63. We are asked to determine whether expenses for the maintenance and repair of a motor home and depreciation thereon are deductible *165 on the ground that the motor home was "property held for the production of income." 2 FINDINGS OF FACT Some of the facts are stipulated and are so found. Petitioners, Walter E. Beckjord and Mary Jane Beckjord, are husband and wife and resided in Cincinnati, Ohio during the taxable year 1968 and at the time of filing the petition herein. They filed a joint return for 1968 with the district director of internal revenue at Cincinnati. Mary Jane Beckjord is a party herein solely by virtue of her making a joint return with her husband, and further reference to petitioner shall mean only Walter Beckjord. On February 18, 1964, petitioner paid the Custom Coach Corporation of Columbus, Ohio $34,300 for a used 35-foot "Flexible" bus which had been converted to a motor home. Originally, the vehicle was used in public transit, then converted by Custom Coach and purchased by a retired couple who drove it about 20,000 miles. At petitioner's directions, Custom Coach modified the interior to accommodate petitioner's family of six. Petitioner's motor home had the following features. It was powered by a heavy-duty Ford truck engine and had an Allison transmission. The interior *166 was equipped with sleeping 3 quarters, a galley, lavatory, shower, and 2 storage compartments. The electrical facilities were powered by a separate Onan generator in the rear of the bus. The vehicle was air-conditioned. Custom Coach Corp. bought, customized, sold and acted as agent for resale of such coaches. Although Custom Coach said it would not repurchase the motor home from petitioner at a later time, it told petitioner that it would act as sales agent on commission for petitioner. Petitioner concluded that there was a growing demand for such vehicles and that he would have expert sales help available to him if he were to dispose of the bus later, and that therefore the bus would be a good investment. From the time of purchase until December 1966, petitioner and his family used the motor home for personal recreational purposes. At one time during that period, petitioner was counsel for the Family Motor Coach Association. Petitioner took his family in the motor home to Alaska and back on the Alcan Highway. The coach was used primarily for vacation trips in 1964, 1965 and 1966. After December 1966, petitioner began to notice overheating of the engine and leaks *167 in the water system. Petitioner 4 was satisfied that the motor home could not be used for family trips unless repairs were made. He thereupon decided to sell the vehicle. Complete abandonment of the motor home for family or recreational use dates from that time. Petitioner talked to the president of the Custom Coach Corp. and made arrangements for consignment of the vehicle for sale. Some repairs were made within the first 4 months of 1967, including an exterior painting for $200, chrome plating for $20, and engine and cooling system repairs for $257. Petitioner personally painted the roof with aluminum paint and cleaned out the inside. In April 1967, the motor home was delivered to Columbus, where it was consigned to the Custom Coach Corp. until its eventual sale.
Custom Coach was unsuccessful in finding a buyer for the coach for several months, although it was shown to many customers who purchased other, less expensive buses from Custom Coach, such as the Bluebird line of motor homes, which were priced at approximately $26,000. In February 1968, Custom Coach warned petitioner that his bus would not sell for more than $19,000 to $20,000 unless substantial and expensive *168 maintenance and refurbishing were 5 carried out. Petitioner authorized Custom Coach to make repairs costing $3,006 which included replacement of upholstery, carpeting and interior painting, replacement of exterior panels which had rusted, and installation of blackout draperies. Shortly after the changes were made, petitioner was notified through Custom Coach of an offer to purchase the motor home for $24,500. Petitioner accepted. At no time during the period the vehicle was offered for sale did petitioner attempt to lease the vehicle. Petitioner considered renting inconsistent with the objective of selling the bus. Also, commercial insurance was unavailable for this class of vehicle. Petitioner was concerned also that the average renter would be unfamiliar with the complex features of the motor home and would possibly do harm to it. Consequently, he turned down the requests of a number of his friends to lease the motor home for use on vacations. Petitioner claims deductions for 1968 for the $3,006 worth of repairs made by Custom Coach that year and for straight-line depreciation of the motor home for the period January 1, 1968 through May 20, 1968, which petitioner *169 computes as $1,421.86. 6 OPINION In considering petitioner's threshold contention that the motor home constituted property held for the production of income within the meaning of the language of section 212 (2) and section 167(a) (2), Internal Revenue Code of 1954, [1] the key question is the purpose or intention of petitioner in light of all the facts and circumstances, for if he was merely seeking to recover his investment in the motor home or part thereof, it will be difficult for petitioner to show that he held the property for the production of income. Frank A. Newcombe, 54 T.C. 1298 (1970), citing Marjorie M. P. May, 35 T.C. 865, 878 (1961), affd. 299 F. 2d 725 (C.A. 4, 1962); Lewis v. United States, *F. Supp. * ( S.D. Ohio 1973, 31 A.F.T.R. 2d. 73-857, 73-1U.S.T.C. par. 9254); Richard R. Riss, Sr., 56 T.C. 388, 416 (1971). To be entitled to the deductions he claims under section 212(2) and section 167, petitioner must show that he and his family abandoned the motor home and offered it for sale for the purpose of realizing a profit representing post-conversion appreciation 7 *170 in the market value of the property. Lewis , supra; Newcombe, supra 15 1302. We do not think petitioner has discharged this burden. Reviewing the facts, we note that petitioner indeed labors under a heavy adverse presumption inasmuch as the placing of the motor home on the market for immediate sale at or shortly after the time of its abandonment by petitioner for personal and recreational purposes is strong evidence that petitioner was not holding the property for post-conversion appreciation in value. If petitioner had attempted to lease the motor home, our case may have been different. See O'Madigan v. Commissioner, 300 F. 2d 154 (C.A. 6, 1962), affirming on another issue T.C. Memo. 1960-212. In fact, however, he passed up opportunities to lease the vehicle. Petitioner claims that the motor home was unsuitable for rental, too difficult to operate, etc. His main concern, we think, was to preserve his original investment in the motor home. Petitioner stressed at trial and on brief that at the time he purchased the vehicle he was *171 very much concerned with its value as an investment and that he considered it a good investment of a rather large sum of his 8 money. By contrast, during the post-conversion period, petitioner was apparently reluctant to invest additional sums to refurbish the interior of the motor home and did so only after petitioner's consignee, after several month's unsuccessful efforts to sell the coach, persuaded petitioner that it would not be marketable absent such repairs. Added to the foregoing is the adverse presumption attending assertions that property is held for the production of income in cases involving pleasure or recreational property, a class of property to which petitioner's motor home belongs. See May, supra at 878; Margit Sigray Bessenyey, 45 T.C. 261, 273-274 (1965), affd. 379 F. 2d 252 (C.A. 2, 1967). After a careful consideration of the evidence, we hold that petitioner did not convert the motor home to "property held for the production of income" at the time he abandoned it for personal use. It follows that the claimed deductions for the taxable year before us are not allowable. We need not reach the further contentions *172 of the parties concerning the allowability of a deduction for depreciation in the case of property held only for sale. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified. ↩