EDWARD C. QUINN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8935-72.   Filed December 8, 1975.

*Michael J. Christianson,* for the petitioner.
*Stephen W. Simpson,* for the respondent.

OPINION

Respondent determined that petitioner's former residence was not "held for the production of income" as that phrase is used in sections[2] 167(a)(2) and 212(2). Respondent, consequently, denied petitioner's claimed deductions for depreciation and maintenance with respect to his former residence for the years 1968 and 1969. Respondent argues further that even if the house was held for the production of income, no deduction for depreciation is allowable because petitioner failed to establish a useful life and a salvage value for the house.

Petitioner maintains that after his divorce in May 1967 he held the Grosse Pointe Woods residence for the production of income and that he is, therefore, entitled to deductions for maintenance and depreciation for the years 1968 and 1969. Petitioner would have us find that he abandoned the house in May 1967, when its value was only $50,000, and that he subsequently held the house for the purpose of realizing post-

---

[2] All statutory references are to the Internal Revenue Code of 1954, as amended.

conversion appreciation in value. We cannot agree that the facts support this contention.

The question to be decided is whether the property was converted from personal use to property held for the production of income. The answer depends upon the intent of petitioner in light of all the facts and circumstances. *Frank A. Newcombe,* 54 T.C. 1298 (1970). In *Newcombe* we indicated that a variety of factors must be analyzed to determine whether personal property is converted to property held for the production of income. The various factors include: (1) Whether the house was occupied by petitioner as a personal residence for a substantial period of time; (2) whether the house was occupied during the period between its abandonment as a residence and its ultimate disposition; (3) whether the property had a recreational character; (4) bona fide offers for rent; and (5) the presence of offers for sale. We further said in *Newcombe* that the taxpayer must be seeking to realize a profit representing postconversion appreciation in value.

Applying the facts of this case to the standards suggested by *Newcombe* we find that petitioner's former residence was not property held for the production of income. Petitioner acquired the house in 1950 for $51,065 (including cost of improvements made at or about the time of purchase). The house served as petitioner's personal residence until the fall of 1967. Before petitioner commenced efforts to sell the house in January 1968, he was advised by Manufacturer's National Bank that $65,000 would be a reasonable price to expect for the house. This figure corresponded with petitioner's knowledge at that time as to the selling prices of other houses in the community. Petitioner fully expected that he could receive $65,000 for the house when he placed it on the market. As the house was never offered for rent, petitioner could have realized income only from the appreciation in the value of the house. We conclude, however, that the appreciation did not represent postconversion appreciation.

Petitioner relies heavily, as he must, upon the difference between the $50,000 value placed upon the house for purposes of the property division between his former spouse and himself in May 1967 and the asking price and eventual selling price of $65,000 to establish that the property was held for the production of income in the form of postconversion appreciation. We are not convinced, however, that the fair market value of the house was only $50,000 in May 1967. The evidence establishes

only that petitioner and his former spouse agreed to assign the house a value of $50,000 for purposes of a property division. We do not find this persuasive evidence of the true value of the house at that time. Many factors enter into decisions regarding property settlements in a divorce case and it may well be that petitioner's former spouse was willing to accept a low value in exchange for petitioner's agreement to some point she was pressing. Although petitioner maintains that the $50,000 figure was based upon an estimate provided by a bank at his request, we would expect that a higher estimate was or could have been procured by petitioner's former spouse. Moreover the same bank which allegedly provided the $50,000 figure advised petitioner within a few months that he could reasonably expect to sell the house for $65,000.

We are not persuaded that the house, originally costing $51,065 in 1950, was worth only $50,000 in May 1967 but was worth $65,000 by the end of 1967. We recognize that in extraordinary cases such fluctuations in value could take place over a short period of time. Although petitioner testified that the housing market in Grosse Pointe Woods fluctuated according to the fortunes of the automotive industry, he has not pointed to any specific fluctuations that would account for the large difference in values as claimed by him during 1967. Indeed, petitioner testified that the property values in Grosse Pointe Woods steadily appreciated over the period from 1950 to 1969. In our view the difference between petitioner's cost basis of $51,065 and the $65,000 asking price established in January 1968, reflected appreciation in value over the entire period that the house served as petitioner's residence. As we said in *Frank A. Newcombe, supra* at 1302: "Clearly, where the profit represents only the appreciation which took place during the period of occupancy as a personal residence, it cannot be said that the property was 'held for the production of income.' "

Petitioner also points to the fact that the house did not sell until April 1969 to support his contention that the asking price of $65,000, established in January 1968, reflected his expectation of future appreciation. Petitioner's own testimony indicates, however, that although there was a limited market for houses in this price range, he fully expected in January 1968 that he could sell the house for $65,000. This indicates that petitioner's goal was to sell the house for its appreciated value at that point and

not to hold the house for future appreciation. As we said in *Newcombe* at 1302: "The placing of the property on the market for immediate sale, at or shortly after the time of its abandonment as a residence, will ordinarily be strong evidence that a taxpayer is not holding the property for postconversion appreciation in value."

We find that petitioner did not abandon the house as a residence until late 1967 and placed it on the market for immediate sale in January 1968 with the expectation of realizing the appreciation in value that occurred over the period that he used the house as a personal residence. Consequently, the property was not held for the production of income and petitioner is not entitled to deductions for depreciation and maintenance.

As we have found that the property was not held for the production of income, we do not reach respondent's arguments regarding useful life and salvage value.

*Decision will be entered for the respondent.*