WILLIAM A. PERRY AND MARI F. PERRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Perry v. Commissioner
Docket No. 7269-76.
United States Tax Court
T.C. Memo 1977-235; 1977 Tax Ct. Memo LEXIS 204; 36 T.C.M. (CCH) 968; T.C.M. (RIA) 770235; July 26, 1977, Filed Alan P. Cusick, for the petitioners. W. Terrence Mooney, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $3,568.24 in petitioners' Federal income tax for 1974. The only issue is the deductibility of maintenance expenses incurred during 1974 when a house, previously used by petitioners as their residence, was held for sale. FINDINGS OF FACT At the time the petition was filed, petitioners William A. and Mari F. Perry were legal residents of Newport, Rhode Island. Employing the cash receipts and disbursements method of accounting, petitioners filed their joint Federal income tax return for 1974 with the District Director of Internal *205 Revenue, Providence, Rhode Island. On August 1, 1960, petitioners purchased a residence in Philipstown, New York, for a price of $62,500. From August 1960 through September 1970, petitioners used the property, consisting of an 18-room house and 20 acres of land, as their personal residence. During this period they made substantial improvements on the property, bringing their cost basis to $108,951.34. From September 15, 1970, until November 1975, petitioners expended additional sums which increased their basis for the property to $121,288.12. For a period prior to September 1970, petitioner William A. Perry (hereinafter Perry) was employed in a bank in the Hudson Valley in New York. In September 1970, he was offered a position as executive vice-president and director of the Newport National Bank in Newport, Rhode Island. To hold this position, both his employer and the applicable law required him to be a resident of Rhode Island. Perry accepted the position, and petitioners then moved to Newport. Perry later became city manager of Newport and, as such, was required to be a resident of the city. Immediately upon moving to Newport, petitioners offered their Philipstown *206 residence for sale at an asking price of $250,000. Perry believed this asking price was the fair market value of the property at that time. In April 1971, petitioners raised the asking price to $350,000, but subsequently decreased it so that in 1975 the asking price was $200,000. In 1974, negotiations were conducted with Irving Klinger for the sale of the property for $130,000. Klinger made an offer at that price and petitioners accepted it. The transaction was not consummated, however, because Klinger could not obtain an adequate purchase money loan. The residence remained unoccupied from September 1970 to June 1976 when it was leased to Michael F. Mastrangelo for a monthly rental of $1,200 with an option to buy the property for a price of $162,500. During 1974 petitioners expended the following amounts for the maintenance of the property and deducted them on their joint Federal income tax return for that year: Heat
$2,370.00
Light
556.86
Insurance
1,359.00
Plumbing (Downey)
460.53
Caretaker
4,031.23
Carpenter
96.00
Grounds maintenance
1,058.82
Total
$9,932.44
Respondent disallowed the claimed deduction. OPINION Section 212(2) allows *207 as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year "for the management, conservation, or maintenance of property held for the production of income." The term "income" for the purposes of this section"is not confined to recurring income but applies as well to gains from the disposition of property." Sec. 1.212-1(b), Income Tax Regs. "Expenses paid or incurred in managing, conserving, or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive * * * and even though the property is held merely to minimize a loss with respect thereto." (Emphasis added.) Sec. 1.212-1(b), Income Tax Regs.
The issue here presented is whether petitioners, during 1974, held the Philipstown residence for investment in the sense that their purpose was to realize gain through its post-conversion appreciation in value. Or was it petitioners' purpose merely to sell their residential property and realize the value which it represented at the time they abandoned it as their residence. The key question is "the purpose or intention of the taxpayer in light of all the facts and circumstances. *208 " Newcombe v. Commissioner,54 T.C. 1298, 1303 (1970); see May v. Commissioner,35 T.C. 865, 878 (1961), affd. 299 F.2d 725 (4th Cir. 1962). We do not think the trial record in this case shows that petitioners' residential property was held for the production of income during 1974. Rather we think petitioners were merely attempting to sell the property as soon as possible and thereby realize the profit represented by the appreciation which took place during the period it was occupied as a personal residence. Immediately upon moving to Newport, petitioners listed the property for sale at a price of $250,000, which they believed to be the fair market value of the property. That they listed the property immediately for sale is strong evidence that they were not holding the property as an investment. As stated in Newcombe v. Commissioner,54 T.C. at 1302: The placing of the property on the market for immediate sale, at or shortly after the time of its abandonment as a residence, will ordinarily be strong evidence that a taxpayer is not holding the property for postconversion appreciation in value. Under such circumstances, *209 only a most exceptional situation will permit a finding that the statutory requirement has been satisfied. Petitioners have not shown the requisite "most exceptional" situation. True, in April 1971, they raised the asking price to $350,000, but there is no concrete evidence that there was any realistic prospect that the house could be sold for that price. We think this increase in the advertised price was only a bargaining stance. Indeed, petitioners evidently accepted the first offer they received for the property, and that offer, made in 1974, called for them to receive only $130,000 for the property. Moreover, the property was never rented or offered for rent until 1976 when it was rented to Michael F. Mastrangelo. The rental agreement with Mastrangelo gave him an option to buy the property for $162,500, some $87,500 less than the original offering price in 1970. Perry explained that the property was not rented because (1) he was concerned that a tenant would damage the property and repairs would be expensive; (2) the property would not be immediately available to a prospective buyer; and (3) occupancy of the property by a tenant would interfere with showing it to prospective *210 buyers. The clear inference is that the property was rented to Mastrangelo only because the agreement with him afforded an opportunity to sell the property. We are, of course, aware that the market value of real estate in certain areas increased dramatically after petitioners abandoned the property as their residence in 1970. Cf. Lowry v. United States,384 F.Supp. 257, 261 (D.N.H. 1974). Had petitioners shown that their reason for not selling the property immediately was to take advantage of a rising market, we would have been permitted to conclude that the property was "held for the production of income" in the form of its post-conversion appreciation. But there is no evidence as to whether real estate prices in the Philipstown area were rising as in certain other areas. And from the day petitioners moved from their residence they sought to sell it.Their objective, as we view the evidence, was not to realize post-conversion appreciation but rather was to realize the value which their property represented at the time they abandoned it as their residence. Accordingly, petitioners are not entitled to the disputed deductions. To reflect the foregoing, *211 Decision will be entered for the respondent.