BASIL C. HALKIDES and BARBARA A. HALKIDES, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Halkides v. Commissioner
Docket No. 4668-76.
United States Tax Court
T.C. Memo 1977-420; 1977 Tax Ct. Memo LEXIS 21; 36 T.C.M. (CCH) 1700; T.C.M. (RIA) 770420; December 8, 1977, Filed Basil C. Halkides, pro se. Judy Jacobs, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $667.49 in petitioners' Federal income tax for their taxable year 1972. Concessions having been made, there are three issues for decision: 1) The deductibility of $2,371.52 of depreciation and maintenance expenses incurred during the period in which a house, previously used by petitioners as their residence, was held for sale. 2) Whether petitioners sustained a deductible theft loss in the amount of $225.00 in addition to the $400.00 previously claimed on their 1972 return. 3) Whether $947.55 in travel, meals, and lodging expenses incurred by petitioners on a trip to Florida are deductible as ordinary and necessary business expenses or as expenses attributable to property held for the production of income.
*23 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners, Basil C. and Barbara A. Halkides, are husband and wife, who resided in St. John, Indiana, at the time of filing their petition herein. They timely filed a joint Federal income tax return for 1972. In December of 1967, petitioners purchased a personal residence in Park Forest, Illinois (Park Forest residence), for approximately $26,000. [1] The couple resided in the house from shortly after its purchase until January of 1972 at which time they vacated it with the intent of selling it. [2] The house remained unoccupied from the time petitioners left until the time it was later sold. The Park Forest residence was first offered for sale by petitioners in October or November 1971 and remained on the market throughout 1972. During this period, no meaningful attempts to rent the house were made. The initial price at which it was offered was about $34,000. Petitioners finally sold the residence *24 in February of 1973 for $30,500. During 1972, petitioners incurred and paid the following maintenance expenses, totaling $3,011.26, in connection with the Park Forest residence: Expense
Amount
Mortgage Interest
$1,075.44
Real Estate Taxes
939.30
Insurance
88.00
Gas
95.54
Transportation expenses
necessary for maintenance--
4,260 miles
511.20
Electricity
53.41
Water
34.87
New Locks
20.00
Welding on old filter tank
15.00
New filter tank for swim-
ming pool
178.50
On their 1972 return, petitioners claimed these expenses as deductions and also claimed $1,375 in depreciation, utilizing a $22,000 basis, a 20-year life, and the 125 percent declining-blance method. When petitioners moved out of their Park Forest residence they left a jewelry box on a closet shelf. Sometime thereafter, when petitioners went to retrieve the box, they discovered it was missing. The contents of the box with assigned values [3] included the following: Assorted Costume jewelry $15
Several antique pins, gold
& silver
50 2 gold baptismal crosses with
chains
50
1 baby ring with chain
10
1 gold baby bracelet
15
1 gold ankle bracelet
15
1 Florentine gold 4 piece set
120
1 diamond chip ring
50
1 diamond engagement ring
200
1 sterling silver charm bracelet
with several charms
35
2-3 sterling silver chains
20
Gold locket with pictures & chain
25
Another locket & chain
20
Total
$625
*25 On their 1972 return, petitioners claimed a theft loss deduction of $400. In late March and early April of 1972, petitioners and their two children embarked on an eleven-day trip to Florida. During their stay, they spent approximately one hour inspecting some investment property at Royal Palm Beach. This property had been purchased by petitioners in 1971 under a land contract which was cancellable at petitioners' option provided they personally inspected the property by April 16, 1972. After their inspection of the property, petitioners exercised their option and cancelled the contract. While in Florida, petitioners also met with Louis P. Steiger, a representative of the International House of Pancakes (IHOP). The meeting lasted about one and one-half hours and its purpose was to discuss the possibility of petitioners acquiring an IHOP franchise in Florida. [4] On their 1972 return, petitioners claimed a deduction of $947.55 for expenses incurred in connection with this trip to Florida. *26 In his statutory notice of deficiency, respondent disallowed petitioners' deductions for depreciation and maintenance in connection with the Park Forest residence. [5] Respondent also disallowed petitioners' travel expenses on the Florida trip. Respondent does not challenge petitioners' theft loss deduction of $400 claimed on their 1972 return, but does dispute the increasing of this amount by $225. OPINION The initial question to be answered is whether petitioners converted the Park Forest house from personal residential property to "property held for the production of income" so as to entitle them to a deduction for maintenance expenses under section 212(2) [6] and depreciation expenses under section 167(a)(2). In Newcombe v. Commissioner,54 T.C. 1298 (1970), we stated that whether such a conversion had been effectuated depended upon "the purpose or intention of the taxpayer in light of all the facts and circumstances." Newcombe,supra, at 1303. *27 In that opinion we enumerated certain factors to serve as guideposts for determining the purpose of the taxpayer. [7]
Applying the facts of this case to the standards suggested by Newcombe, we find that petitioners' former residence was not property held for the production of income. To begin, under the circumstances of this case, the factor which weighs most heavily against petitioners is the absence of any meaningful attempt on their part to rent the property. Thus, we are faced with determining whether the Park Forest residence was held for the production of income when the petitioners merely offered the property for sale. In this context we held in Newcombe that for a conversion to be accomplished: The taxpayer must * * * be seeking to realize a profit representing postconversion appreciation * * *. * * *
The placing of the property on the market for immediate sale, at or shortly after the time of its abandonment as a residence, will ordinarily *28 be strong evidence that a taxpayer is not holding the property for postconversion appreciation in value. Under such circumstances, only a most exceptional situation will permit a finding that the statutory requirement has been satisfied. [54 T.C. at 1302]. For personal reasons, petitioners decided to sell their Park Forest residence. Several months prior to their abandonment of the house as a residence, petitioners placed the house on the market for sale at about $34,000. Petitioners have offered no credible evidence to support the contention that this asking price reflected an expectation of future appreciation. To the contrary, petitioners indicated on brief that their goal was to sell the house at that point and not to hold the house for future appreciation. In view of these facts and with the absence of any other evidence to the contrary, we believe petitioners were not holding the property for postconversion appreciation. [8] Consequently, the property was not held for the production of income and petitioners are not entitled to deductions for depreciation and maintenance. *29 The second issue for decision is whether petitioners are entitled to deduct $225 as a theft loss in addition to the $400 already claimed by petitioners on their 1972 return. When petitioners moved from their Park Forest residence in January 1972, they left a jewelry box on a closet shelf. Later, when they went to retrieve it, the box was missing. Section 165(c)(3) allows a deduction under section 165(a) for any uninsured loss sustained during the taxable year arising from a theft. The amount deductible is equal to the lesser of the property's fair market value or the property's adjusted basis. Section 1.165-7, Income Tax Regs. Even if we assume that petitioners' loss occurred as the result of a theft, their claimed deduction of $225 must nevertheless be disallowed. Before the deduction is allowable, it is necessary for petitioners to establish the amount of the deductible loss, i.e., they must show the claimed deduction is the lesser of the property's basis or its fair market value at the time of the theft. Unfortunately, petitioners have only provided us with values based on their estimates of the purchase price of the various items or, in the case of a gift, the fair *30 market value of the property at the time they received it. So although we are convinced that petitioners sustained a loss, we are unable to find that the amount of the loss exceeded the $400 already claimed by them on their 1972 return. The final issue for decision is whether petitioners are entitled to a deduction for their travel, meals, and lodging expenses incurred by them on a trip to Florida. During 1972 petitioners and their two children took an eleven-day trip to Florida. Out of the eleven days, petitioners spent only about two and one-half hours at pursuits which could conceivably qualify as business or investment related. Based on the total evidence presented, we believe that the expenditures in question were primarily related to vacation oriented travel and that the "business" or "investment" aspects of petitioners' trip were of only minor significance. Accordingly, petitioners' Florida expenses are not deductible. [9] See section 1.262-1(b)(5), Income Tax Regs.
*31 Due to concessions, Decision will be entered under Rule 155. Footnotes
1. Of the $26,000 purchase price, $22,000 was allocable to the house and $4,000 to the land. ↩
2. The decision to sell the Park Forest residence was made because Mrs. Halkides disliked it.↩
3. These values represent estimates by petitioners based on either the purchase price of the item or the value at the time given in the case of gifts.↩
4. During the same time period, petitioners were also negotiating with another party for an IHOP franchise in the Midwest. Eventually they invested $1,000 in a Midwest franchise.↩
5. Respondent did allow the interest and taxes paid in connection with the house.↩
6. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
7. Some of the factors which must be weighed and balanced are: (1) offers to rent; (2) offers to sell; (3) length of residency; (4) occupancy between abandonment and sale; (5) recreational character of the property.↩
8. At trial petitioner Basil C. Halkides testified that his intention during 1972 was to hold on to the Park Forest residence because he believed the market was temporarily depressed. Apparently, petitioners believe this is sufficient to satisfy the requisite motive necessary to convert the house to property held for the production of income. After viewing the demeanor of the petitioner at trial, coupled with the absence of any corroborating evidence, we do not find this testimony sufficiently credible to sustain petitioners' contention on this point.↩
9. Once having arrived in Florida, petitioners might have been entitled to deduct expenses directly attributable to their land investment and IHOP franchise had they substantiated their nature and amount. See Stroope v. Commissioner,T.C. Memo. 1975-348↩.