WILLIAM H. HOULE and LAURA C. HOULE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Houle v. Commissioner
Docket No. 6497-84.
United States Tax Court
T.C. Memo 1985-389; 1985 Tax Ct. Memo LEXIS 242; 50 T.C.M. (CCH) 603; T.C.M. (RIA) 85389; August 5, 1985. Daniel J. Winfree, for the petitioners. Karen Nicholson *244 Sommers, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined the following deficiencies in, and additions to, petitioners' Federal income taxes: Year
Deficiency
Section 6653(a)(1) [1]
1979
$8,860
$443
1980
5,483
274
1981
3,567
178
For 1981, respondent also determined that petitioners are liable for an addition to tax of 50 percent of the interest due on $3,567 under section 6653(a)(2). [2]
*245 Petitioners have stipulated to be bound by this Court's decision in Miller v. Commissioner, docket No. 14478-82, with respect to respondent's adjustments relating to depreciation and other expenses claimed by petitioners for the years in issue in connection with their purchase of a lithographic plate from Multiple Graphics Enterprise, Inc. After concessions, the issues remaining for decision are: (1) whether deductions and investment tax credits claimed by petitioners as farm losses may be deducted under section 212(2) as ordinary and necessary expenses incurred with respect to property held for the production of income; and (2) whether petitioners are liable for the additions to tax for negligence. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners William H. Houle and Laura C. Houle resided in El Cajon, California, when they filed their petition in this case. They filed joint Federal income tax returns for 1979, 1980, and 1981. Petitioner Laura C. Houle (Mrs. Houle) was employed as a real estate agent since 1970 and as a broker since *246 1974. Mrs. Houle specialized in land development and in new construction. Petitioner William H. Houle (Mr. Houle) was employed as a program finance manager for an aircraft company. Petitioners invested in real estate from 1958 until the time of trial in this case. During that period, petitioners bought and sold numerous parcels of real property and built several houses for sale or exchange. Overall, petitioners profited from their real estate investments. In 1976, petitioners acquired 80 acres of undeveloped land near Julian, California (hereinafter the Julian property). Julian is a rural area and petitioners' property is adjacent to a campground. Petitioners acquired the Julian property by exchanging it for a "spec home" previously built by Mrs. Houle. At the time petitioners acquired the Julian property, they were seeking farm property and thought it was suitable for growing apples. Petitioners did not have any experience or expertise in farming. From the time petitioners acquired the property in 1976 until they began work on the property in 1978, they were involved in gaining access to the property, which was covered with thick brush, and in determining what to do with *247 the property. During that period, petitioners also contacted the United States Department of Agriculture for recommendations as to the best use for the property and for a road plan. In response to their request, petitioners received a conservation plan that outlined land use and treatments for different areas of the property and information regarding range and pasture management, irrigation water management, and tree planting. Petitioners learned that the area was not particularly suitable for apple orchards due to high winds and early frost, and that much of it was better suited for grazing. Petitioners received seeding and management recommendations for proposed irrigated and dryland pastures from the Soil Conservation Service in August 1978. Petitioners' attempts to grow grass for grazing were unsuccessful. During 1978 through 1981, petitioners took the following actions with respect to the Julian property: In 1978, petitioners made a rough dirt road to two house building sites; sunk a 460-foot well; installed a 3,500-gallon water tank as required by the County Fire Department for the issuance of house building permits; installed septic systems and obtained building permits *248 for both houses; constructed a 1,160 square-foot dome house and a 760 square-foot dome house; and began clearing brush from approximately 10 acres of hillside. The interior of each house was unfinished as of 1978. In 1979, petitioners continued to work on the interior of eah house and to clear the 10-acre hillside; and built a new dirt road from the property entrance to the well. In 1980, petitioners continued to work on the interior of the main house; attempted to build an earthen dam over a seasonal stream to form a fishing pond; and purchased a 35-horsepower tractor, equipped with a post-hole digger, scraper and front-end loader, for $11,130. Petitioners used the tractor to repair the dirt roads and to run and electric generator. The earthen dam was washed out by heavy rains in 1980. Both houses were completed in 1980, except for interior paint and floor covering, which still had not been completed as of the time of trial. In 1981, petitioners cleared small brush from areas previously cleared by a larger tractor; commenced installation of a two-strand wire fence around 5 of the 10 cleared acres; corresponded with the U.S. Forestry Service about a joint program to reforest *249 10 to 20 acres of a hillside in pine trees; and on October 3, 1981, purchased an 8-kilowatt generator for $1,679. The generator, run by the tractor, supplied electricity to the houses. Petitioners planted 15 fir trees approximately 3 years prior to the trial. During the years in issue, petitioners made numerous trips to the Julian property. Mrs. Houle maintained a daily diary of her real estate activities and noted the days on which petitioners made trips to the Julian property. During 1979, petitioners made at least 49 trips to the Julian property, 47 of which were weekend trips; during 1980, petitioners made at least 30 weekend trips; and during 1981, petitioners made at least 35 weekend trips. Petitioners usually spent the night during their visits to the property, and, on occasion, they were joined by other family members or friends. At the time of trial, petitioners had not spent the night at the Julian property for approximately 2 years. The diary contained no details regarding petitioners' trips to the Julian property. Through the time of trial in 1985, petitioners neither offered the property for rent nor listed it for sale. Petitioners received no income from farming *250 or any other activity on the Julian property and have conceded that no farming operation existed on the property during the years in issue. The present controversy arises from respondent's disallowance of losses produced by the following deductions and credits claimed by petitioners on Schedules F (Farm Income and Expenses) of their income tax returns for 1979, 1980, and 1981, in connection with the Julian property: 1979
1980
1981
Depreciation
$117
$3,728
$1,185
Insurance
515
570
Conservation expenses
121
Land clearing expenses
420
Travel (4,230 miles 1980;
846
720
3,600 miles 1981)
Fence
392
250
Repairs & maintenance
382
Supplies
150
Casual wages
210
Land clearing
expenses amortized
395
740
648
Total Deductions
$512
$6,762
$4,115
Investment Tax Credit [3]
$ 94
$1,124
$ 168
Petitioners consulted an accountant with respect to the deductibility of these items as farm expenses. *251 OPINION Although petitioners claimed the disputed losses on their 1979, 1980, and 1981 returns as expenses incurred in connection with farming activity on the Julian property, they have conceded that they were not engaged in farming on the property during the years in issue. Petitioners argue that despite the treatment of the expenses on their returns, they were holding the property for investment purposes and are therefore entitled to the deductions and credits as expenses incurred for the management, conservation, or maintenance of property held for the production of income under section 212(2). [4]
Respondent contends that petitioners are not entitled to the claimed deductions and credits because their activities were not engaged in for profit within the meaning of section 183 and that the soil conservation, land clearing, and fencing expenditures are nondeductible capital expenditures. *252 Respondent also challenges petitioners' substantiation of certain of the expenses at issue. Petitioners bear the burden of proving their entitlement to the deductions that they claim. Welch v. Helvering,290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a). Section 183 provides in part that if an individual's activity is "not engaged in for profit" only those deductions allowable regardless of a profit objective (such as interest or taxes) may be taken. The term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 [5] or under section 212(1) or (2). Section 212(2) permits a deduction for all of the ordinary and necessary expenses paid or incurred during the taxable year for the management, conservation, or maintenance of property held for the production of income. Section 1.212-1(d), Income Tax Regs., provides that: (d) Expenses, to be deductible under *253 section 212, must be "ordinary and necessary." Thus, such expenses must be reasonable in amount and must bear a reasonable and proximate relation to the production or collection of taxable income or to the management, conservation, or maintenance of property held for the production of income. Section 167(a) allows as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of property used in a trade or business or property held for the production of income. Pursuant to section 48(a)(1), investment tax credit is available only for property that is depreciable (or amortizable) and has a useful life of at least 3 years. If property cannot be depreciated because it was not used in a trade or business, or was not held for the production of income, no investment tax credit will be allowed. Pike v. Commissioner,78 T.C. 822, 841-842 (1982), affd. without opinion 732 F.2d 164 (9th Cir. 1984). Petitioners have conceded that their activities during the years in issue did not constitute the trade or business of farming. They presented no evidence that they were engaged in any other trade or business in connection with the Julian *254 property, and the record reveals no activities that would entitle petitioners to a deduction under section 162(a). Thus petitioners' right to their claimed deductions and investment tax credits depends upon a successful showing that the Julian property was held for the production of income. The standard for determining whether an individual is engaged in activities for the production or collection of income or for the management, conservation or maintenance of property held for the production of income, as well as for determining whether an individual is carrying on a trade or business, is whether the individual engaged in the activity with an actual and honest profit objective. Dreicer v. Commissioner,78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Estate of Baron v. Commissioner,83 T.C. 542, 553 (1984). While a reasonable expectation of profit is not required, petitioners' objective of making a profit must be bona fide and must be predominant. Elliott v. Commissioner,84 T.C. 227, 236 (1985), on appeal (3rd Cir., May 23, 1985). Profit objective is a question of fact to be determined *255 from all the facts and circumstances. Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). The burden of proof is upon the taxpayer. Surloff v. Commissioner,81 T.C. 210, 233 (1983); Rule 142(a). Greater weight is to be given to the objective facts than to a mere declaration of the taxpayer's intent. Sec. 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,72 T.C. 659, 666 (1979). The regulations provide a list of factors relevant in determining whether a taxpayer has the requisite profit objective: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) any elements of personal pleasure or recreation. *256 Sec. 1.183-2(b)(1) through (9), Income Tax Regs. No one factor is conclusive, and we do not reach our decision herein by merely counting the factors that support each party's position. Golanty v. Commissioner,72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Dunn v. Commissioner,supra at 720. Based on all the evidence, we find that petitioners did not engage in the activities on the Julian property with an actual and honest profit objective, and that, consequently, the property was not held for the production of income. Petitioners acquired the Julian property in 1976, approximately 9 years before the trial in this case. They apparently undertook no substantial activity with respect to the property until 1978. They argue that their intent at the outset was to operate a farm or business in order to produce income from apple orchards, fir trees, or livestock grazing. Petitioners contend that their activities of brush clearing, building, well drilling, road marking and clearing, and soil conservation were consistent with that intent. They assert that the loss of livestock and poultry maintained *257 on the land, flooding and erosion of the roads, and extensive brush growth caused them to "entertain doubts" as to the income-producing potential of the property as originally anticipated. As a result, they maintain that they planted fir trees and contacted government agencies to investigate profitable alternative uses for the property and to educate themselves on how most effectively to manage the land. At trial, Mrs. Houle testified that petitioners' present plan is to plant fir trees and to rent the houses, with the "ultimate goal * * * to probably divide the property." She indicated that the planting of fir trees would lead to the possibility for a Christmas tree farm, or for development and sale to an adjacent campground. She stated that only 15 fir trees had been planted, approximately 3 years prior to the trial. The burden on petitioners is that of proving the property was being held for the production of income during the years in issue, i.e., that the property was being used for a profit-seeking purpose during 1979 through 1981. Meredith v. Commissioner,65 T.C. 34, 41 (1975). Thus, petitioners' activities subsequent to 1981 and their intent as of *258 the time of trial have little weight in our determination of whether the property was held for the production of income during they years in question. Aside from petitioners' self-serving, vague and general testimony, the record contains no evidence that would support a finding that the subject property was held for investment. In view of Mrs. Houle's avowed experience as a real estate agent and broker, we find that the manner in which petitioners carried on their various activities on the Julian property is inconsistent with petitioners' claim of a profit objective. The property had never been offered for rent or listed for sale. There was no evidence linking the steps taken by petitioners with respect to the property to future sale, rental, or development. Mrs. Houle testified that her practice with respect to other properties held for investment had been to hold the property for approximately 2 years prior to sale. Mrs. Houle's expertise in real estate was not applied here, however, in view of the total lack of effort to convert the Julian property into income-producing property. Petitioners had no farming experience or expertise and apparently did not seek any expert or *259 other appropriate advice before acquiring the property. Mrs. Houle has not shown any particular expertise in the acquisition or sale of farmland. Losses during the initial stage of an activity or losses sustained because of unforeseen or fortuitous circumstances beyond the taxpayer's control do not necessarily indicate that the activity was not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. On the other hand, a record of continued losses over a series of years and the unlikelihood of achieving a profitable operation, while not conclusive, are important factors bearing on the taxpayer's true intention. Sec. 1.183-2(b)(6), Income Tax Regs.; Golanty v. Commissioner,72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Jasionowski v. Commissioner,66 T.C. 312, 322 (1976); Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Petitioners argue that the absence of economic profit should not preclude the deductions under section 212. Section 1.212-1(b), Income Tax Regs., provides in part that: Expenses paid or incurred in managing, *260 conserving, or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto. A determination that the property is held for investment is, however, a prerequisite to the applicability of this regulation, and in ascertaining whether the investment status exists, the absence of the economic indicators of profit are appropriate for consideration. Nowcombe v. Commissioner,54 T.C. 1298, 1302 (1970). The record is devoid of evidence of any economic indicators of profit. Petitioners introduced no evidence of the fair market value of the property, of any appreciation in its value, as a result of or in spite of their activities, or of any profit potential through development, sale, or rental of the property. Changes in a taxpayer's method of operation upon realization that an activity has no potential for profitability other than for asset appreciation may be indicative of the taxpayer's intent to make a profit. *261 See sec. 1.183-2(b)(1), Income Tax Regs.; Engdahl v. Commissioner,72 T.C. 659, 669 (1979). [6] Petitioners have failed to establish, however, that they were in fact holding the property for investment upon their determination that the land was not suitable for growing apples or for grazing. Although property held solely for sale may qualify as property held for the production of income under section 212(2) ( Newcombe v. Commissioner,54 T.C. at 1301-1302), the record contains no facts justifying a finding that the property was held for sale during the years in issue. As we stated in Jasionowski v. Commissioner (66 T.C. at 323): [I]f the anticipation of eventually selling the house at a profit were in itself sufficient to establish that the property was held with a profit-making intent, rare indeed would be the homeowner who purchased a home several years ago who could not make the same claim. Petitioners spent a substantial amount of time at the Julian property and expended a great deal of effort in their activities there. The property was located in *262 a rural area with recreational facilities. We infer that petitioners, occasionally accompanied by family or friends, chose to spend the majority of their weekends at the property because they derived substantial personal pleasure or recreation from their use of the property. While the time and effort expended by a taxpayer in carrying on an activity may be indicative of a profit motive, expenses attributable to a house used as a second residence are nondeductible under section 262. In summary, petitioners' testimony, without any probative foundation, is not sufficient to support a profit objective. Engdahl v. Commissioner,72 T.C. at 666; Churchman v. Commissioner,68 T.C. 696, 701 (1977). Petitioners' unsupported contention that the property was held for investment appears to be merely an afterthought, and we do not accept their present characterization of their activities relating to the property, especially in view of their treatment of the expenses as farm expenses on their income tax returns for the years in issue. Because we have determined that petitioners did not hold the property for the production of income, we need not consider respondent's *263 alternative arguments regarding substantiation and the nondeductibility of capital expenditures. As to the additions to tax, section 6653(a)(1) provides for a 5 percent addition to tax for negligence or intentional disregard of rules or regulations. In addition to the amount determined under section 6653(a)(1), section 6653(a)(2) provides for an addition to tax in an amount equal to 50 percent of the interest payable under section 6601 with respect to that portion of the underpayment due to negligence or intentional disregard of rules or regulations and for the period beginning on the last day prescribed for payment of the underpayment. Petitioner bears the burden of proof on this issue. Enoch v. Commissioner,57 T.C. 781, 802 (1972); Rule 142(a). Petitioners reported the disputed expenses as farm expenses on Schedules F of their returns. Petitioners reported no income from farming and conceded that they were not engaged in farming on the Julian property during the years in issue. Deductions for soil conservation and land clearing expenses are allowable only to taxpayers engaged in the business of farming and are specifically limited to a percentage of income *264 derived from farming. Secs. 175 and 182. [7] We have found that these deductions, as well as the remaining deductions and credits claimed by petitioners, were not allowable. Petitioners have failed to show that their underpayments of tax were not due to negligence or intentional disregard of rules and regulations. The fact that petitioners may have consulted an accountant regarding the deductibility of these items does not insulate them from the additions to tax for negligence. Enoch v. Commissioner,57 T.C. at 802. Accordingly, we sustain respondent's determination with respect to the additions to tax under section 6653(a)(1). We also conclude, for purposes of the section 6653(a)(2) addition to tax, that the portion of petitioners' underpayment for 1981 attributable to the expenses incurred in connection with the Julian property was attributable to negligence or intentional disregard of rules and regulations. [8]
*265 To reflect our holding for respondent with respect to the deductions and credits disallowed in connection with the Julian property and the parties' agreement to be bound by this Court's decision in Miller v. Commissioner, docket No. 14478-82, for which a decision has not yet been entered, An appropriate order will be issued.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Sec. 6653(a)(2), applicable to taxes the last date prescribed for payment of which is after December 31, 1981, provides: (2) Additional amount for portion attributable to negligence, etc.--There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601-- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1), and (B) for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).↩
3. The amounts shown in our findings for investment tax credits claimed by petitioners are the amounts stipulated by the parties. On their 1979 return, petitioners claimed an investment tax credit of $5,094 on $50,938 of new property; respondent disallowed $94 in his statutory notice of deficiency. For 1980, petitioners reported a tentative investment tax credit of $1,124 on $11,240 of new property and claimed a credit of $298; in his statutory notice of deficiency, respondent disallowed $298. For 1981, the amount claimed by petitioners and disallowed by respondent was $168 on new property of $1,679.↩
4. Sec. 212(2) provides: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- * * * (2) for the management, conservation, or maintenance of property held for the production of income * * *.↩
5. Ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business are deductible under sec. 162(a).↩
6. See Brown v. Commissioner,T.C. Memo. 1977-15↩.
7. The amount of soil conservation expenditures deductible under sec. 175 in any one taxable year is limited to 25 percent of a taxpayer's gross income from farming. Sec. 175(b). The deduction for land clearing expenses is limited to the lesser of $5,000 or 25 percent of the taxable income derived from farming. Sec. 182(b). ↩
8. Respondent has conceded that for purposes of sec. 6653(a)(2) no portion of any underpayment for 1981 due to petitioners' activities in connection with Multiple Graphics Enterprise, Inc., was due to negligence or intentional disregard of rules and regulations.↩