GERARD H. MADAN AND DOROTHY M. MADAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Madan v. Commissioner
Docket No. 5072-80.
United States Tax Court
T.C. Memo 1986-7; 1986 Tax Ct. Memo LEXIS 602; 51 T.C.M. (CCH) 241; T.C.M. (RIA) 86007; January 7, 1986. James E. Merritt, for the petitioners. Frank D. Armstrong, Jr., for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency in petitioners' Federal income tax of $5,183.05 for the Taxable year 1976. The only issue is whether petitioners converted their former residence into property held for the production of income for computing a loss under section 165[1] and depreciation under section 167 and, if so, the amount of the loss and the depreciation they are entitled to deduct. *603 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners, Gerard H. MaDan and Dorothy M. MaDan, husband and wife, resided in Hickory, North Carolina, at the time of the filing of their petition. They filed a joint income tax return for the taxable year 1976 with the Internal Revenue Service at Greensboro, North Carolina. Petitioners' personal residence was at 556 Third Street, Hickory, North Carolina prior to April 1974, when they moved to a house they had just constructed on Lake Hickory, North Carolina. They occupied the Lake Hickory house as their principal residence until sometime in September 1974 when, being pressed for the repayment of the personal loans used by finance the construction of the Lake Hickory house, they moved back into their former residence at 556 Third Street and listed the Lake Hickory residence for sale. The total cost to petitioners of the Lake Hickory house including the lot on which it was located was $66,817.94. They originally listed it for sale at $67,500. In November 1974, petitioners terminated the listing and allowed the *604 house to be occupied by Jack Lance and his wife. At that time Lance was an employee in petitioners' commercial photography business and he and his wife were actively negotiating with petitioners with respect to a possible purchase of both the business and the Lake Hickory property. During their occupancy of the Lake Hickory house, the Lances paid no fixed monthly rent but did pay the utilities and a few incidental expenses for maintenance. About the end of February 1975, negotiations between petitioners and the Lances for the sale of the business and the Lake Hickory property fell through and Mr. Lance's employment with petitioners was terminated. Petitioners demanded that the Lances leave the Lake Hickory property and pay rent at $300 per month for the period of their occupation. The Lances left the house but refused to pay the rent demanded by petitioners. After the Lances left the house, petitioners in 1975 listed it for sale or rent with two different brokers. In January 1976, petitioners listed the house for sale or rent with still another broker. Through the efforts of this broker, petitioners finally sold the house in June 1976 and their net proceeds after selling expenses *605 totaled $46,858.20. The house was not occupied from the time the Lances moved out until it was sold. On their 1976 tax return, petitioners claimed a deduction of $17,632.64 for the loss on the sale of the house. They also claimed a deduction of $705 for depreciation. Respondent disallowed both deductions in their entirety. OPINION The parties agree that from April to September of 1974 the Lake Hickory property constituted the petitioners' personal residence. They disagree, however, as to whether it was thereafter converted by petitioners into property held for the production of income. Petitioners contend that they qualify to deduct the loss on the sale of the property under section 165 and to deduct depreciation under section 167 because in November 1974 they "converted the Lake Hickory house from a personal residence to an income-producing property" and the conversion of the property is evidenced by the fact that for "almost two years thereafter [until June 1976 when the property was sold] they rented or tried to rent" the house. Respondent contends that petitioners' offers to rent the house do not establish that it was converted to income-producing property and that *606 under the circumstances of this case, the occupancy of the residence by the Lances did not constitute a conversion of the residence to rental property. Under section 165, [2] petitioners are entitled to deduct their loss on the sale of the house if the loss was incurred in a transaction entered into for profit. Under section 167, [3] they are entitled to a deduction for depreciation if the house was held for the production of income. [4]
*607 A loss on the sale of a taxpayer's personal residence is not deductible under section 165. However, if the use of the house as his personal residence is terminated and thereafter the property is subjected to some transaction which is profit inspired, then the loss is deductible. Grammer v. Commissioner,12 T.C. 34 (1949). The determination of whether a personal residence has been converted to property held for the production of income so as to qualify for depreciation under section 167 depends upon "the purpose or intention of the taxpayer in light of all of the facts and circumstances." Newcombe v. Commissioner,54 T.C. 1298, 1303 (1970). In making such a determination, the following factors have been considered: (1) whether the house was occupied by the taxpayer as a personal residence for a substantial period of time; (2) whether the house was occupied during the period between its abandonment as a residence and its ultimate sale or other disposition; (3) *608 whether the property has a recreational character; (4) whether bona fide offers for rent are present; and (5) whether offers for sale are present. Newcombe v. Commissioner,supra at 1300-1301; Quinn v. Commissioner,65 T.C. 523, 526 (1975). Petitioners insist that they qualify under both section 165 and section 167 by their conversion of the residence to rental property in November 1974. They have the burden of proving that an appropriate conversion occurred. Jasionowski v. Commissioner,66 T.C. 312 (1976). See also Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). It is agreed that petitioners abandoned the house as their personal residence in September of 1974 and listed the property for sale. It is also agreed that from November 1974 to February 1975 the Lances resided in the house, that while they resided in the house the Lances paid only the utilities plus a few incidental expenses of maintenance, and that during all or a part of this time Mr. Lance was negotiating with petitioners with regard to a possible *609 purchase of the house as well as a possible purchase of petitioners' business in which he was employed. There is disagreement as to the terms upon which the house was occupied by the Lances. Petitioner, Gerard H. MaDan, testified that there was an oral agreement between him and Mr. Lance to the effect that the Lances would pay rent in the amount of $300 per month. To the contrary, Mr. Lance testified that there was no agreement with respect to a fixed monthly rental. Instead, according to his testimony, he and his wife were permitted by petitioners to live in the house from November 1974 to February 1975 in return for the payment of only the utilities and maintenance expenses. Mr. Lance further testified that it was his understanding that petitioners permitted them to move into the house under this very favorable arrangement because: (1) Mrs. MaDan was upset when she learned that the Lances were living in an old house which had cost only $8,000 and which was in very poor condition; (2) petitioners wanted someone in the Lake Hickory house to look after the property and to keep an eye on their daughter who lived next door; and (3) petitioners thought that by permitting the Lances *610 to live in the house under such favorable terms, petitioners would enhance their chances of successfully negotiating a sale of the house and/or their photography business to the Lances. Mr. Lance did admit that when the negotiations regarding a possible purchase by the Lances terminated, Mr. MaDan unsuccessfully demanded that the Lances pay rent in the amount of $300 per month for the entire period of their occupancy. From a consideration of the record as a whole, and especially the fact that while the Lances were living in the house they were admittedly being considered by petitioners as possible purchasers of the house and the business, we believe that Mr. Lance's recollection of the circumstances is substantially more plausible than that of Mr. MaDan. Furthermore, Mrs. MaDan failed to appear as a witness which supports an inference that her testimony if offered on this point would have been unfavorable to petitioners. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We conclude, therefore, that the occupancy of the Lake Hickory house by the Lances was not pursuant to a bona fide rental agreement *611 but instead was part of petitioners' efforts to sell the house or the business to the Lances and, consequently, cannot be considered as any evidence that petitioners had converted the house to rental property. Subsequent to the departure of the Lances, petitioners listed the property with three different realtors. The listings, however, were forsaleorrent and even if exclusively for rent would not be sufficient to establish a profit motive. See Grammer v. Commissioner,12 T.C. 34 (1949); Horrmann v. Commissioner,17 T.C. 903, 909 (1951); and Wilson v. Commissioner,49 T.C. 406, 415 (1968), revd; and remanded on other grounds, 412 F.2d 314 (6th Cir. 1969). In the absence of an actual bona fide rental, the listings are not sufficient. Heiner v. Tindle,276 U.S. 582 (1928); sec. 1.165-9(b)(1), Income Tax Regs.
In view of all the foregoing, we conclude that petitioners have failed to carry their burden of proving that prior to its sale the residence was converted *612 to rental property. In fact, from the record as a whole it is readily apparent that from the time they abandoned the property is their personal residence in September 1974 until it was sold in June 1976, they were primarily holding it for sale and not for the production of income through rents. This includes the period during which the property was occupied by the Lances who, in our opinion, were not tenants but prospective purchasers. Therefore, petitioners do not qualify to deduct the loss on the sale or depreciation on the house. Inasmuch as we have found that petitioners are not entitled to such deductions, we need not consider the other issues raised by the pleadings. Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 165 provides in part as follows: (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business * * *. ↩
3. Section 167 provides in part as follows: (a) General Rule.--There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)-- (1) of property used in a trade or business, or (2) of property held for the production of income. ↩
4. Petitioners do not contend that the deductions were incurred in a trade or business.↩